# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 41113

| | | |
|---|---|---|
| NEIGHBORS FOR THE PRESERVATION OF THE BIG AND LITTLE CREEK COMMUNITY, an unincorporated corporation; PEOPLE FOR PAYETTE'S FUTURE, INC., an Idaho nonprofit corporation; JOSEPH BERCIK and BETTY BERCIK; CODY BURLILE and CHRISTINA BURLILE; DE BURLILE and LORI PRATT; LINDA BURLILE; JORDAN CARY and HARMONY CARY; LARRY DAHNKE and SUSAN DAHNKE; DALE DELLINGER; RAY DENIG and JACKIE DENIG; RICHARD EVEY and SUSAN EVEY; KANE HUDDLESTON and JOYCE HUDDLESTON; LUKE HUDDLESTON; JOHN JEFFRIES and JO AN JEFFRIES; JERRY KORN; LEON KORN; CAMERON MAHLER and CINDY MAHLER; KIMBERLY CHRISTENSEN; CYRIL ROLAND; GREG SEMON and TERRI SEMON; ROGER SMITH and MARY VIVIAN SMITH; ELIZABETH STEPHENS; DICK TOWNER and SUE TOWNER; JOHN WALGENBACH and DENISE MORGAN; DEBORAH WEBER; and ENRIQUE YBARRA, JR., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Boise, December 2014 Term<br><br>2015 Opinion No. 93<br><br>Filed: September 25, 2015<br><br>Stephen Kenyon, Clerk |
| Petitioners, | ) ) | |
| and | ) ) | |
| JOHN (JACK) BURLILE; H-HOOK, LLC, an Idaho limited liability company; CLIFFORD MORGAN and MARY MORGAN; THOMAS PENCE; IRENE ROLAND; TOM ROLAND and MARCIA ROLAND; JAMES UNDERWOOD, JR.; and JEFFERY WEBER, | ) ) ) ) ) ) ) ) | |
| Petitioners-Appellants, | ) ) | |
| v. | ) | |

1

|                                           | )  |
| ----------------------------------------- | -- |
| **BOARD OF COUNTY COMMISSIONERS** <br>**OF PAYETTE COUNTY,** | ) <br>) <br>) |
|                                           | )  |
|    **Respondent,**         | )  |
|                                           | )  |
| **and**                                   | )  |
|                                           | )  |
| **ALTERNATE ENERGY HOLDINGS, INC.,**      | )  |
|                                           | )  |
|    **Intervenor-Respondent.** | )  |
|                                           | )  |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Payette County. Hon. Molly J. Huskey, District Judge.

The decision of the district court is <u>affirmed</u>.

Andersen Banducci, PLLC, and Williams Bradbury, P.C., Boise, for appellants. Wade L. Woodard argued.

Payette County Prosecutor's Office, Payette, for respondent Board of County Commissioners of Payette County.

Spink Butler, LLP, Boise, for intervenor-respondent Alternate Energy Holdings, Inc. Thomas H. Clark argued.

HORTON, Justice.

The Payette County Board of Commissioners (the Commissioners) approved a conditional rezone of a parcel of land from agricultural to industrial, subject to a development agreement, in connection with a project to build a nuclear power plant. Various parties appealed the approval to the district court. The district court upheld the Commissioners' actions. H-Hook, LLC (H-Hook), a neighboring landowner, appeals from the district court's decision. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In late 2009, Alternate Energy Holdings Inc. (AEHI) looked to Payette County (the County) as the proposed site of a nuclear power plant. AEHI contracted to purchase approximately 5000 acres of property located off Big Willow and Stone Quarry Roads in the County. The property was zoned Agricultural. Because the property needed to be rezoned in order to accomplish AEHI's objectives, AEHI started two proceedings.

*1. Proceedings to revise the County's Comprehensive Plan.*

2

First, AEHI sought changes to the County's comprehensive plan. AEHI submitted an application to amend the comprehensive plan to change the designation of the subject property from Agriculture 1, 2, and Mixed to Industrial. H-Hook's principal, Michael Humphreys, testified in opposition to the amendment of the comprehensive plan. H-Hook's attorney argued that the comprehensive plan did not contain the statutorily required plans for power plant sites and utility transmission corridors. *See* I.C. § 67-6508(h); *Sprenger, Grubb & Assocs., Inc. v. City of Hailey*, 133 Idaho 320, 322, 986 P.2d 343, 345 (1999). The County amended the comprehensive plan, designating the subject property as Industrial and adding the following language:

> Energy producers who wish to locate electric, gas, or other energy production facilities in Payette County must apply to the Payette County Planning and Zoning Department and each application will be considered on *an individual basis* in accordance in accordance [sic] with the Local Land Use Planning Act (I.C. § 67-6500 et seq), Payette County Code and this plan.

Prior to this amendment, the comprehensive plan had only identified providers of electricity, natural gas, home heating fuel and propane and had provided the following limited statement regarding future energy and communication trends:

> Power, gas, telephone, cable, newspaper, and post and parcel services will continue to be offered to all developed portions of the county, as needed. Despite regional growth trends, consumption of electrical power is actually declining due to enhanced technological efficiency in transmission and distribution.

Only one sentence in the comprehensive plan arguably related to utility transmission corridors. ("Telephone lines generally coincide with major electrical transmission lines.")

### 2. Proceedings regarding the conditional rezone and development agreement application.

On June 22, 2010, AEHI submitted a Rezone and Development Agreement Application to the County's Planning and Zoning Commission. In this application, AEHI proposed the rezone "of approximately 500 acres from A (agricultural) to I-2 (heavy industrial) zoning." AEHI submitted a draft development agreement in support of the application.

The draft development agreement was available for public review in the Planning and Zoning office. In November of 2010, the County made the application and supporting documents available to the public on a website. The County also made digital and hard copies available to the public in advance of the first hearing before the Planning and Zoning Commission. That hearing, originally scheduled for December 2, 2010, was continued to December 9, 2010. The Planning and Zoning Commission recommended approval of AEHI's applications.

3

H-Hook and other interested parties appealed the Planning and Zoning Commission's decision to the Commissioners. The draft development agreement was further revised, and released to the public along with the County staff report on May 26, 2011, eleven days prior to the June 6, 2011 hearing before the Commissioners. The revisions to the proposed development agreement were color-coded to facilitate the public's understanding of the revisions.

H-Hook and its attorney provided written testimony to the Commissioners. After receiving extensive public testimony, the Commissioners approved AEHI's application. The Commissioners issued their findings of fact, conclusions of law, and order on August 29, 2011. The Commissioners found that the proposed zoning was compatible with surrounding land uses and that the 500 acre parcel that would be rezoned would be contained within a larger 5000 acre parcel, resulting in a buffer zone from neighboring properties. On September 23, 2011, a number of parties sought judicial review of the Commissioners' decision. The district court granted AEHI's motion to intervene in the judicial review proceedings.

The district court reached three conclusions that are the subject of this appeal. First, the district court rejected H-Hook's contention that the comprehensive plan was invalid due to the absence of statutorily required components regarding power plant siting and power transmission corridors. Second, the district court determined the Commissioners' approval of the rezone did not constitute spot zoning because the rezone was in accordance with the County's amended comprehensive plan. Third, the district court determined the County did not violate H-Hook's due process rights by denying H-Hook an adequate opportunity to present objections to AEHI's application. The district court issued its Order on Appeal and Order of Remand on May 2, 2013. H-Hook timely appealed.

## II. STANDARD OF REVIEW

The Local Land Use Planning Act (LLUPA) permits an affected person to seek judicial review of an approval or denial of a land use application, as provided in the Idaho Administrative Procedures Act (IDAPA). I.C. § 67-6521(1)(d). "This Court has stated that for the purposes of judicial review of LLUPA decisions, where a board of county commissioners makes a land use decision, it will be treated as a government agency under IDAPA." *In re Jerome Cnty. Bd. of Comm'rs*, 153 Idaho 298, 307, 281 P.3d 1076, 1085 (2012).

> When a district court acts in its appellate capacity pursuant to IDAPA, "we review the district court's decision as a matter of procedure." *Williams v. Idaho State Bd. of Real Estate Appraisers*, 157 Idaho 496, 502, 337 P.3d 655, 661

4

(2014) (quoting *Jasso v. Camas Cnty.*, 151 Idaho 790, 793, 264 P.3d 897, 900 (2011)). When doing so, we conduct an independent review of the agency record. [*Dry Creek Partners, LLC v. Ada Cnty. Comm'rs, ex rel. State*, 148 Idaho 11, 16, 217 P.3d 1282, 1287] (2009). This Court will affirm a district court's decision upholding a zoning board's action unless the party contesting the zoning board's decision demonstrates that (1) the board erred in a manner specified in Idaho Code section 67–5279(3), and (2) the board's action prejudiced its substantial rights. *Id.* Idaho Code section 67–5279(3) provides that a board's decision will only be overturned where its findings, inferences, conclusions, or decisions are:

> (a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) not supported by substantial evidence on the record as a whole; or (e) arbitrary, capricious, or an abuse of discretion.

I.C. § 67–5279(3).

*917 Lusk, LLC v. City of Boise*, 158 Idaho 12, 14, 343 P.3d 41, 43 (2015). "There is a strong presumption that [a] zoning board's actions were valid and that it has correctly interpreted its own zoning ordinances." *Hawkins v. Bonneville Cnty. Bd. of Comm'rs*, 151 Idaho 228, 231, 254 P.3d 1224, 1227 (2011). "This Court exercises free review over questions regarding whether the board has violated a statutory provision, which is a matter of law." *In re Jerome Cnty. Bd. of Comm'rs*, 153 Idaho at 308, 281 P.3d at 1086. "Due process issues are generally questions of law, and this Court exercises free review over questions of law." *Neighbors for a Healthy Gold Fork v. Valley Cnty.*, 145 Idaho 121, 127, 176 P.3d 126, 132 (2007).

### III. ANALYSIS

The issues presented in this appeal are whether: (1) this Court has jurisdiction to consider a challenge to the validity of the comprehensive plan; (2) the comprehensive plan is invalid because it is missing components required by Idaho Code section 67-6508; (3) the rezone was illegal spot zoning; and (4) the notice and hearing procedures employed by the County were defective.

**A. This Court has jurisdiction to consider a challenge to the comprehensive plan.**

AEHI and the County raise a new issue not presented to the district court. They contend that due to the lack of a statutory grant of authority for judicial review of an amendment to a comprehensive plan, this Court lacks jurisdiction to decide this question. H-Hook argues that it has a statutory right to judicial review of a conditional rezone and that AEHI and the County waived this argument by not presenting it below.

5

We can easily dispense with H-Hook's second argument. "Whether a court lacks jurisdiction is a question of law that may be raised at any time. . . ." *State v. Dieter*, 153 Idaho 730, 733, 291 P.3d 413, 416 (2012) (quoting *State v. Jones*, 140 Idaho 755, 757, 101 P.3d 699, 701 (2004)).

In the absence of a statutory grant of authority, the courts lack jurisdiction to conduct judicial review of local government actions under LLUPA. *Taylor v. Canyon Cnty. Bd. of Comm'rs*, 147 Idaho 424, 433, 210 P.3d 532, 541 (2009). Under LLUPA there is a right to judicial review for an "affected person aggrieved by a final decision . . . ." I.C. § 67–6521(1)(d). Idaho Code section 67-6521(1)(a)(iii) defines an "affected person" as a person having a "bona fide interest in real property which may be adversely affected by . . . [a]n approval or denial of an application for *conditional rezoning* pursuant to section 67-6511A."[1] Idaho Code section 67-6511A specifically addresses rezoning agreements, such as the rezone in the present case, that are based upon a development agreement.

H-Hook's challenge to the amended comprehensive plan is a component of its attack on the County's decision to grant AEHI's application for conditional rezone. Idaho Code section 67-6521 grants jurisdiction to the district court and this Court to conduct judicial review of that decision. As H-Hook's argument regarding the validity of the comprehensive plan is merely a subsidiary issue related to its challenge to the conditional rezone, we conclude that we have jurisdiction to decide this issue.

## B. The comprehensive plan is not invalid for lacking components required by Idaho Code section 67-6508(h).

H-Hook argues the rezone was invalid because the County's amended comprehensive plan does not contain the statutorily required "analysis" for "power plant sites" and "utility transmission corridors" as required in Idaho Code section 67-6508(h). AEHI responds the comprehensive plan met Idaho Code section 67-6508(h)'s requirement to show "general" plans for power plant sites and utility transmission corridors.

"[A] valid comprehensive plan is a precondition to the validity of zoning ordinances." *Sprenger, Grubb & Assocs., Inc. v. City of Hailey*, 133 Idaho 320, 322, 986 P.2d 343, 345 (1999). "[A] valid comprehensive plan must contain each of the components as specified in § 67-

---

[1] This language was added to Idaho Code section 67-6521 in 2010, prior to the petition for judicial review filed in this case on September 23, 2011. 2010 Idaho Sess. L. ch. 175, § 3, p. 361.

6508, unless the plan articulates a reason why a particular component is unneeded." *Id.* Idaho Code section 67-6508 provides:

> It shall be the duty of the planning or planning and zoning commission to conduct a comprehensive planning process designed to prepare, implement, and review and update a comprehensive plan, hereafter referred to as the plan. . . . *The plan shall consider previous and existing conditions, trends, compatibility of land uses, desirable goals and objectives, or desirable future situations for each planning component.* The plan with maps, charts, and reports *shall be based on the following components* as they may apply to land use regulations and actions unless the plan specifies reasons why a particular component is unneeded.[2]

Idaho Code section 67-6508 also provides a list of such components that must be addressed in a comprehensive plan. In particular, Idaho Code section 67-6508(h) outlines the requirements of the public services, facilities, and utilities component, requiring:

> (h) Public Services, Facilities, and Utilities--An *analysis showing general plans* for sewage, drainage, *power plant sites*, *utility transmission corridors*, water supply, fire stations and fire fighting equipment, health and welfare facilities, libraries, solid waste disposal sites, schools, public safety facilities and related services.

"Statutory interpretation begins with 'the literal words of the statute, and this language should be given its plain, obvious, and rational meaning.'" *Seward v. Pac. Hide & Fur Depot*, 138 Idaho 509, 511, 65 P.3d 531, 533 (2003) (quoting *Jen–Rath Co. v. Kit Mfg. Co.*, 137 Idaho 330, 335, 48 P.3d 659, 664 (2002)). H-Hook focuses on the statutory reference to "analysis," which suggests that the comprehensive plan should contain a certain measure of detailed consideration of the subject. In our view, the requirement of a "general plan" diminishes the degree of required "analysis." "General" means "concerned or dealing with universal rather than particular aspects" and "concerned with main elements rather than limited details." *Merriam Webster's Collegiate Dictionary* 484 (19th ed. 1993).

As previously noted, the County responded to H-Hook's attorney's objection to the comprehensive plan's silence as to power plant siting by amending the comprehensive plan. The amendment was not extensive:

> Energy producers who wish to locate electric, gas, or other energy production facilities in Payette County must apply to the Payette County Planning and Zoning Department and each application will be considered on *an individual*

---

[2] Idaho Code section 67-6508 has been amended twice during the pendency of this case. 2011 Idaho Sess. L. ch. 89, § 2, p. 193; 2014 Idaho Sess. L. ch. 93, § 4, p. 255. Neither amendment is pertinent to this case. For the sake of convenience this opinion will cite to the current version of Idaho Code section 67-6508.

*basis* in accordance in accordance [sic] with the Local Land Use Planning Act (I.C. § 67-6500 et seq), Payette County Code and this plan.

H-Hook contends that this provision does not meet the requirements of Idaho Code section 67-6508(h) because it merely states that the County will plan on an *ad hoc* basis. In support of its argument, H-Hook directs us to our decision in *Sprenger, Grubb & Assocs., Inc.* In *Sprenger*, this Court considered the City of Hailey's comprehensive plan, which completely lacked two components (land use map and property rights) required by Idaho Code section 67-6508. 133 Idaho at 321–22, 986 P.2d at 344–45. Because Idaho Code section 67-6508 mandated that comprehensive plans contain these components, this Court decided that a rezoning ordinance was invalid. *Id.* at 322, 986 P.2d at 345.

This case differs from *Sprenger*. As amended, the comprehensive plan addresses power plant siting, albeit on a case-by-case basis. Although we acknowledge that this language provides little guidance, it would be extraordinarily difficult, if not impossible, to develop detailed plans for the many different types of power plants (i.e., natural gas, coal, wind, solar, hydroelectric, biomass, geothermal, nuclear) that may be proposed, particularly since the size of such projects can be widely variable. We agree with the district court that the amended comprehensive plan satisfied the requirements of Idaho Code section 67-6508(h) as to power plant siting.

The comprehensive plan contains no meaningful discussion of power transmission corridors, simply stating: "Telephone lines generally coincide with major electrical transmission lines." However, we view the requirement regarding power transmission corridors as relating to high voltage power lines. The duty to analyze the location and possible routing of such lines is only triggered by a notification from "the public utilities commission concerning the likelihood of a federally designated national interest electric transmission corridor."[3] I.C. § 67-6508(p). There is nothing in the record to suggest that the County has received such notice.

---

[3] Idaho Code section 67-6508(p) provides:

> (p) National Interest Electric Transmission Corridors—*After notification by the public utilities commission concerning the likelihood of a federally designated national interest electric transmission corridor*, prepare an analysis showing the existing location and possible routing of high voltage transmission lines, including national interest electric transmission corridors based upon the United States department of energy's most recent national electric transmission congestion study pursuant to sections 3681 and 12212 of the energy policy act of 2005. "High-voltage transmission lines" means lines with a capacity of one hundred fifteen thousand (115,000) volts or more supported by structures of forty (40) feet or more in height.

Considering the "strong presumption that the zoning board's actions were valid," we conclude that the amended comprehensive plan satisfies Idaho Code section 67-6508(h)'s "general plans" requirement.

**C. The district court correctly found that the rezone was not illegal spot zoning.**

The district court held that the Commissioners' approval of the rezone did not constitute spot zoning because the rezone was in accordance with the County's amended comprehensive plan. On appeal, H-Hook contends the rezone is impermissible type one spot zoning because, under the amended comprehensive plan, power plant siting does not have to follow any sort of comprehensive planning analysis: instead the Commissioners are permitted to use an *ad hoc* approach. H-Hook also argues that the district court erroneously concluded that type two spot zoning can never occur if the zoning was consistent with the comprehensive plan.

"A claim of 'spot zoning' is essentially an argument the change in zoning is not in accord with the comprehensive plan." *Evans v. Teton Cnty.*, 139 Idaho 71, 76, 73 P.3d 84, 89 (2003).

> There are two types of "spot zoning." Type one spot zoning may simply refer to a rezoning of property for a use prohibited by the original zoning classification. The test for whether such a zone reclassification is valid is whether the zone change is in accord with the comprehensive plan. Type two spot zoning refers to a zone change that singles out a parcel of land for use inconsistent with the permitted use in the rest of the zoning district for the benefit of an individual property owner. This latter type of spot zoning is invalid.

*Id.* at 76–77, 73 P.3d at 89–90 (internal citations omitted).

Here, the rezone was not invalid type one spot zoning. The rezone was in compliance with the comprehensive plan's designation of the land due to the amendment of the comprehensive plan to designate the property as Industrial. Because the rezone was in accord with the comprehensive plan, it was not impermissible type one spot zoning.

H-Hook also contends that the rezone is quintessential type two spot zoning because it singles out the proposed site for an industrial nuclear power use when the proposed site is surrounded by mostly agricultural land. The Commissioners found AEHI's proposed zoning was consistent with surrounding uses, stating:

> The zoning proposed is compatible with surrounding uses and zones. The surrounding uses include agriculture, confined animal feeding operations (CAFO), a county landfill and residential. The surrounding agricultural property is not deemed prime agricultural. Clay Peak Landfill is located approximately three miles northwest of the subject property. There are four (4) CAFOs within five miles. In addition, the proposed facility is over three miles away from the

9

> nearest residence. There is a five hundred (500) acre parcel that the rezoning affects, however, a buffer zone is included in the proposed rezone to ensure the facility is enclosed by ___ thousand acres of agriculturally zoned property. According the [sic] application and testimony, the buffer zone will provide habitat for wildlife and grazing animals.

The comprehensive plan provides that the Industrial use designation "encompasses existing industrial operations, such as CAFOs and the Clay Peak Landfill." Thus, there are five industrial uses within five miles of the proposed site. The Commissioners' factual determination is entitled to deference when supported by substantial and competent evidence. *See In re Jerome Cnty. Bd. of Comm'rs*, 153 Idaho 298, 307, 281 P.3d 1076, 1085 (2012). We agree with the district court's conclusion that the conditional rezone did not constitute impermissible type two spot zoning.

## D. The notice and hearing procedures followed by the County were adequate.

The district court determined that H-Hook had an adequate opportunity to present and respond to evidence related to AEHI's application although the district court did not specifically address H-Hook's claim that it failed to have adequate opportunity to review revisions to the development agreement. H-Hook argues the development agreement was the most critical part of AEHI's application and H-Hook was denied adequate time to review revisions to it, resulting in a due process violation.

"Since decisions by zoning boards apply general rules to 'specific individuals, interests or situations,' and are 'quasi-judicial in nature' they are subject to due process constraints." *Cowan v. Bd. of Comm'rs of Fremont Cnty.*, 143 Idaho 501, 510, 148 P.3d 1247, 1256 (2006) (quoting *Chambers v. Kootenai County Bd. of Comm'rs*, 125 Idaho 115, 118, 867 P.2d 989, 992 (1994)). We have described the flexible nature of due process as:

> Due process is not a concept to be rigidly applied, but is a flexible concept calling for such procedural protections as are warranted by the particular situation. The U.S. Supreme Court has stated that identification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and, third, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute requirements would entail.

*Neighbors for a Healthy Gold Fork v. Valley Cnty.*, 145 Idaho 121, 127, 176 P.3d 126, 132 (2007) (internal quotations omitted). The procedural due process "requirement is met when the defendant is provided with notice and an opportunity to be heard. The opportunity to be heard

must occur at a meaningful time and in a meaningful manner in order to satisfy the due process requirement." *Id.* (citation omitted)

In its Rezone Application, AEHI proposed the rezone "of approximately 500 acres from A (agricultural) to I-2 (heavy industrial) zoning." In support of its Rezone Application, AEHI submitted a draft development agreement. A development agreement is an agreement "between the county and the developer, which affects the use or development of the parcel of property which is the subject of a rezone or development request." Payette County Code § 8-5-11A; *see also* I.C. § 67-6511A. H-Hook directs our attention to *Johnson v. City of Homedale*, 118 Idaho 285, 796 P.2d 162 (Ct. App. 1990) and *Fischer v. City of Ketchum*, 141 Idaho 349, 109 P.3d 1091 (2005). In both cases, applications to Planning and Zoning Commissions were found to be invalid for lack of notice because the applications did not contain necessary components when submitted. *Johnson*, 118 Idaho at 287, 796 P.2d at 164 (invalidating a special use permit application because it failed to contain a concept plan and narrative statement, which were required to be included by Owyhee County Ordinance); *Fischer*, 141 Idaho at 354–55, 109 P.3d at 1096–97 (invalidating conditional use permit application because it did not contain a certification of an avalanche attenuation device by a licensed engineer, which was required by Ketchum Zoning Code).

The development agreement in the present case is not similar to the missing components in *Johnson* and *Fischer* for two reasons. First, a draft of AEHI's proposed development agreement was initially provided in AEHI's Rezone and Development Agreement Application filed on June 22, 2010, and was available for public review.[4] In November, the County placed the application, including the draft development agreement, on a website dedicated to providing the public with access. Though the draft development agreement did not originally contain the County's revisions, a draft development agreement with revisions was made available on November 24, 2010, eight days before the scheduled December 2, 2010, hearing before the Planning and Zoning Commission. These eight days provided adequate time for H-Hook to review the development agreement, especially since it already had access to an earlier version.

_____

[4] H-Hook argues this original development agreement was deficient because it did not contain the conditions of approval, which it argues are "the most essential part of the development agreement." However, it makes sense that the conditions of approval would not be included in AEHI's original Rezone Application because they were meant to be negotiated with the County. The conditions of approval first appear in the record when the draft development agreement was released on May 26, 2011, eleven days prior to the June 6, 2011 hearing. H-Hook does not explain why there was insufficient time to review the conditions of approval prior to the June 6, 2011 hearing. We are satisfied that eleven days was sufficient time to review the eight and one-half pages of conditions.

The County's efforts to make information available to the public were especially apparent in proceedings before the Commissioners. The revised draft development agreement was made public on May 26, 2011, eleven days prior to the June 6, 2011 hearing. This version of the development agreement was color coded. Changes made by the county prosecutor were shown in red, changes made as a result of comments received during the December, 2010 hearings before the Planning and Zoning Commission were shown in blue, "clean up" changes were printed in green, and changes made as a result of a third party review were reflected in purple.

The requirements for a development agreement are set by ordinances that a county's governing board adopts. I.C. § 67-6511A. Development agreements are not required for conditional rezones under the County's zoning ordinances. Payette County Code section 8-5-11 is silent as to a time frame for providing a development agreement, stating: "*at any time during any stage of the development process*, a development agreement *may* be required by the board of county commissioners, recommended by the commission or it *may* be requested by the developer." Unlike *Johnson* and *Fischer*, there is simply no requirement in the County's zoning ordinances that a conditional rezone application contain a development agreement.

Our decision in *Neighbors for a Healthy Gold Fork* is particularly instructive in considering H-Hook's due process claim. There, we held that the procedural due process rights of parties opposing a proposed planned unit residential development were not violated when the neighbors received a copy of a modified plan twelve days before a hearing. 145 Idaho at 126, 128, 176 P.3d at 131, 133. This Court held the modifications did not violate the neighbors' due process rights because their attorney "had adequate time to at least have some review of the Modified Plan. Further, there [was] no testimony or other evidence in the record to support [the neighbors'] contention that their experts' opinions were rendered valueless by virtue of the modifications." *Id.* at 128, 176 P.3d at 133. This Court also noted that the neighbors had an opportunity to be heard as their attorney presented testimony and exhibits at the hearing. *Id.*

H-Hook's ability to respond to the revisions in the draft development agreement is similar to the neighbors' ability to respond to the modified plan in *Neighbors for a Healthy Gold Fork*. Though the draft development agreement did not originally contain the County's revisions, a draft development agreement with revisions was made available eight days before the December 2, 2010, proceeding before the Planning and Zoning Commission. These eight days

provided adequate time for H-Hook to review the document, especially since it had previous access to the earlier draft development agreement.

Notably, although H-Hook's principal, Humphreys, testified before the Commissioners and identified problematic aspects of the development agreement, he did not contend that he lacked adequate time to review the development agreement. In a letter dated June 7, 2011, Humphreys again commented on aspects of the development agreement without stating that he had any issue with the amount of time that he had to review the document. We conclude that H-Hook's claimed due process violation is without merit.

**E. No party is awarded attorney fees on appeal.**

H-Hook, the County, and AEHI all request attorney fees under Idaho Code section 12-117. Under Idaho Code section 12-117 this Court "shall award the prevailing party reasonable attorney's fees, witness fees and other reasonable expenses, if it finds that the nonprevailing party acted without a reasonable basis in fact or law." Idaho Code section 12-117 requires that an entity and a state agency be adverse parties. *Lake CDA Invs., LLC v. Idaho Dep't of Lands*, 149 Idaho 274, 284, 233 P.3d 721, 731 (2010). "If the agency does not participate in the merits of the appeal . . . , then it and the person are not adverse parties, even if the agency made the decision being appealed." *Id.*

H-Hook has not prevailed in this appeal and is therefore not entitled to an award of attorney fees. AEHI is not adverse to the County; indeed, their respective attorneys signed the same brief. Therefore, AEHI is not entitled to an award of attorney fees. Although H-Hook did not prevail, we are unable to conclude that the pursuit of this appeal was unreasonable. Therefore, we do not award the County attorney fees.

### IV. CONCLUSION

We affirm the district court's decision on judicial review. We award AEHI and the County costs on appeal.

Chief Justice J. JONES, Justices EISMANN, BURDICK and Justice Pro Tem WALTERS, **CONCUR**.