# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 47909

CITIZENS AGAINST LINSCOTT / INTERSTATE ASPHALT PLANT, an unincorporated non-profit association organized under the laws of the State of Idaho,

    Petitioner-Appellant-
    Cross Respondent,

v.

BONNER COUNTY BOARD OF COMMISSIONERS, a public agency of the State of Idaho,

    Respondent-Cross Appellant,

and

FRANK E. LINSCOTT and CAROL LINSCOTT, INTERSTATE CONCRETE & ASPHALT COMPANY,

    Intervenors-Respondents-
    Cross Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, February 2021 Term

Opinion Filed: May 12, 2021

Melanie Gagnepain, Clerk

SUBSTITUTE OPINION. THE COURT'S PRIOR OPINION DATED MARCH 22, 2021 IS HEREBY WITHDRAWN.

---

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Jeff M. Brudie, District Judge.

The decision of the district court is <u>affirmed</u> in part and <u>reversed</u> in part.

Givens Pursley, LLP, Boise, for Appellant. Gary G. Allen argued.

Bonner County Prosecuting Attorney for Respondent Bonner County. William S. Wilson argued.

Finney & Finney, PA, Sandpoint, for Intervenors Linscott. John A. Finney argued.

Winston & Cashatt, Coeur d'Alene, for Intervenors Interstate Concrete & Asphalt Company. Elizabeth A. Tellessen argued.

———————————

1

BURDICK, Justice

This is an administrative appeal concerning whether a conditional use permit issued pursuant to an amendment to county code is valid when the amendment is subsequently found void. In addition, this case presents questions concerning the limitations on actions for judicial review of agency action brought under the Idaho Local Land Use Planning Act ("LLUPA") and the Idaho Administrative Procedure Act ("IDAPA").

Citizens Against Linscott/Interstate Asphalt Plant ("CAL") challenges a conditional use permit ("CUP") issued by the Bonner County Board of Commissioners ("the County"). The CUP was based on a recent amendment to Bonner County zoning ordinances ("the Amendment") and authorized Interstate Concrete and Asphalt Company ("Interstate") to operate an asphalt batch plant within Frank and Carol Linscott's gravel mine in Sagle, Idaho. In its petition for judicial review by the Bonner County district court, CAL challenged both the validity of the Amendment and the County's decision to issue the CUP. The district court determined that CAL had standing to file its petition for judicial review of the CUP and that CAL had timely filed its petition. However, the district court concluded that it could not declare the Amendment invalid in a proceeding for judicial review under LLUPA and IDAPA. Accordingly, the district court upheld the County's decision to grant the CUP, giving the County deference in applying its own land-use ordinances.

During the pendency of this appeal, CAL filed an action for declaratory relief before another district court judge to have the Amendment declared void. In that proceeding, the County admitted that the Amendment had been adopted without proper public notice and stipulated to a judgment and order declaring the Amendment void. On appeal of the administrative decision to this Court, CAL argues, inter alia, that the subsequent voiding of the Amendment also invalidates the CUP or that the CUP was not issued in conformity with Bonner County zoning laws.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual background.

In the small community of Sagle, Idaho, Frank and Carol Linscott own and operate a gravel pit mine on approximately 139 acres of property encompassing two parcels of land. While the Linscotts' property is currently zoned for rural use, the gravel pit predates the enactment of

2

Bonner County's zoning code and is a grandfathered nonconforming use.[1] In 1981, when Bonner County enacted its zoning code, the gravel mine was approximately seventeen acres and mining appeared to occur only on the northern parcel of land. Presently, that mine now occupies as many as 112 acres and seems to be conducted on both parcels of land.

In nearby Sandpoint, Idaho, Interstate operates an asphalt batch plant in the north of the city. This batch plant has operated since 1987 and, over the years, Interstate has received special use permits from the County to conduct temporary asphalt operations at the Linscotts' gravel pit. Operating the batch plant requires gravel from the Linscotts' mine, which is accomplished by large gravel trucks making frequent back-and-forth trips between the two locations.

## B. The administrative proceedings.

On August 8, 2018, the Linscotts and Interstate jointly filed for a CUP from the Bonner County Planning and Zoning Commission ("P&Z Commission") to permanently relocate Interstate's asphalt batch plant to the Linscotts' gravel pit. They based their application on the Amendment, which conditionally permitted asphalt batch plant operations in a rural zone so long as they occurred in an "active gravel pit."

After receiving public comment, the P&Z Commission approved the CUP at a public hearing on November 15, 2018, issuing a written decision to that effect the next day. That decision was appealed to the County, which approved the CUP during a public hearing on January 11, 2019. The County issued a written decision approving the CUP on January 14. The County found that the use would be in an "existing gravel pit" and concluded that allowing the batch plant would comport with Bonner County Revised Code ("BCRC") and the Bonner County Comprehensive Plan.

Subsequently, CAL petitioned the County for reconsideration of its decision to issue the CUP, claiming it was deficient in eleven respects. Ultimately, the County only considered one of CAL's asserted deficiencies—that granting the CUP would expand the gravel pit's nonconforming use. The County again approved the CUP after considering CAL's arguments at a public hearing on March 22, 2019, and issued a written decision to that effect on March 25. In that decision, the County determined that the gravel pit's compliance with the nonconforming use provisions of BCRC was irrelevant to its decision to issue the CUP because the Amendment

---

[1] The precise magnitude of this use and its compliance with the nonconforming use provisions of county zoning code is of significant dispute in this matter and discussed in full below.

3

only required an "active gravel pit." The County also noted that the use would occur in an "active, legal nonconforming gravel mine."

### C. Proceedings before the district court.

On April 19, 2019, CAL attempted to file its petition for judicial review of the County's decision on reconsideration in the Bonner County district court via the iCourt filing system. That filing was rejected because it did not include a case information sheet. A notification of the rejection was sent to CAL's counsel on April 22. CAL attempted to refile a corrected petition for judicial review with a case information sheet, but that corrected petition was never received. CAL claims the submission failed due to either "a glitch in the iCourt system" or "an inadvertent 'mis-click'" by administrative staff for CAL's counsel. Counsel for the County discovered the filing error on April 30 when he attempted to file a notice of appearance but was unable to locate an active case in the iCourt system. Counsel for the County then called Counsel for CAL on May 1 to inform him of the mistake and CAL refiled the petition the same day. That petition for judicial review was accepted by the district court on May 1 but did not include a date relating back to the original April 19 filing.

The County subsequently moved to dismiss CAL's petition for judicial review as untimely because it was accepted by the district court nine days after the statutorily prescribed twenty-eight day filing period. The County also moved to dismiss the petition for judicial review on the basis that CAL had not served the Linscotts or Interstate, the other parties to the CUP proceedings. The district court heard oral argument on June 27, 2019, and issued a written decision denying the County's motion to dismiss. The district court reasoned that CAL's attempt at refiling its petition in a timely fashion was "prevented by circumstances outside their control" and denied the motion to dismiss "in the interest of justice." In addition, the district court declined to dismiss the petition for inadequate service, concluding that the County did not demonstrate any prejudice.

With the petition for judicial review moving forward, both the Linscotts and Interstate filed a motion to intervene in the case to defend their interests in the CUP. The district court granted both motions.

The district court fielded briefing from all four parties and heard oral argument on December 13, 2019. Broadly speaking, CAL's arguments against the CUP fell into two categories: first, that the CUP was invalid because the Amendment, which conditionally

permitted asphalt batch plants in active gravel pits, had been unlawfully adopted; and second, that the County had not complied with its own ordinances in granting the CUP because it enlarged or expanded an existing nonconforming use. The County, the Linscotts, and Interstate (collectively "Respondents") argued in favor of upholding the CUP on four bases: first, that CAL was barred from challenging the Amendment in a judicial review of agency action; second; that CAL lacked standing to challenge the County's action; third, that CAL's petition had not been timely filed or served; and forth, that the County had complied with its zoning ordinances when issuing the CUP.

Ultimately, the district court issued an opinion and order affirming the County's decision to grant the CUP. The district court reasoned that CAL had associational standing to pursue this action on behalf of its members because the members themselves had standing. Additionally, the district court determined that the time for filing the petition had not begun to run until the County issued its decision on reconsideration and that CAL had timely filed its petition. Considering the merits, the district court determined that it could not consider whether the Amendment was invalid in a proceeding for judicial review. Similarly, the district court concluded that it was powerless to render a legal conclusion as to the gravel pit's compliance with the zoning code absent an underlying enforcement action from the County to that effect. Without a declaratory judgment action finding the Amendment invalid, or an enforcement action showing the gravel pit was out of compliance, the district court afforded deference to the County in interpreting its own ordinances and affirmed the issuance of the CUP.

CAL timely appealed. Bonner County, the Linscotts, and Interstate cross-appealed.

**D. The declaratory judgment proceedings.**

After filing its notice of appeal, CAL filed a declaratory judgment action in Bonner County district court seeking to have it declare the Amendment void for having been adopted without public notice. During those proceedings, the County admitted that the Amendment had been adopted without proper notice and stipulated to an order and judgment declaring the Amendment void. On July 17, 2020, the district court entered an order and judgment declaring that the Amendment to BCRC conditionally permitting asphalt batch plants in an active gravel pit was void.

## II.    ISSUES ON APPEAL

1. Did the district court err in concluding that CAL has standing?

5

2. Did the district court err in concluding that CAL filed its petition for judicial review within statutorily and judicially prescribed time limits?

3. Did the district court err in refusing to dismiss the petition for judicial review because CAL did not serve the Linscotts or Interstate with the petition?

4. Did the district court err in determining it could not consider the validity of the Amendment in a proceeding for judicial review?

5. Does the subsequent stipulated order and judgment declaring the Amendment void have an impact on this action?

    a. May this Court properly consider the judgment declaring the Amendment void on appeal?

    b. Does the judgment declaring the Amendment void, if considered, also void the CUP issued pursuant to the Amendment?

6. Did the district court err in concluding that the County's interpretation and application of its zoning ordinances was not arbitrary, capricious, or an abuse of discretion?

7. Are any of the parties entitled to an award of attorney's fees?

## III.    STANDARD OF REVIEW

The Local Land Use Planning Act ("LLUPA"), Idaho Code sections 67-6501 to 67-6539, provides for judicial review of the approval or denial of a land use application by an affected person aggrieved by a final decision. I.C. § 67-6521(1)(d). A judicial review of a land use decision shall follow the procedures outlined for judicial review of agency action as set forth in IDAPA. *Id.* Under LLUPA, when a challenged land use decision is made by a board of county commissioners, the board is treated as a government agency under IDAPA. *In re Jerome Cnty. Bd. of Comm'rs*, 153 Idaho 298, 307, 281 P.3d 1076, 1085 (2012). A district court acts in its appellate capacity when hearing a petition for judicial review under LLUPA, and this Court reviews the district court's decision "as a matter of procedure" but "conduct[s] an independent review of the agency record." *Neighbors for Pres. of Big and Little Creek Cmty. v. Bd. of Cnty. Comm'rs of Payette Cnty.*, 159 Idaho 182, 186, 358 P.3d 67, 71 (2015) (citations and quotations omitted). A district court's decision to uphold a land use decision will be affirmed unless the petitioner shows both "that (1) the board erred in a manner specified in Idaho Code section 67–5279(3), and (2) the board's action prejudiced its substantial rights." *Id.* (citation omitted). Idaho Code section 67-5279(3) requires that a board's decision be affirmed unless

the court finds that the agency's findings, inferences, conclusions, or decisions are:

(a) in violation of constitutional or statutory provisions;

6

(b) in excess of the statutory authority of the agency;

(c) made upon unlawful procedure;

(d) not supported by substantial evidence on the record as a whole; or

(e) arbitrary, capricious, or an abuse of discretion.

I.C. § 67-5279(3).

"The interpretation of a . . . zoning ordinance is a question of law over which this Court exercises free review." *917 Lusk, LLC v. City of Boise*, 158 Idaho 12, 14, 343 P.3d 41, 43 (2015) (citing *Dry Creek Partners, LLC v. Ada Cnty. Comm'rs, ex rel. State*, 148 Idaho 11, 18, 217 P.3d 1282, 1289 (2009)). However, "[p]lanning and zoning decisions are entitled to a strong presumption of validity, including the agency's application and interpretation of its own zoning ordinances." *Neighbors for a Healthy Gold Fork v. Valley Cnty.*, 145 Idaho 121, 126, 176 P.3d 126, 131 (2007) (citing *Cowan v. Bd. of Comm'rs of Fremont Cnty.*, 143 Idaho 501, 508, 148 P.3d 1247, 1254 (2006)). Additionally, questions of constitutional due process are questions of law over which this Court exercises free review. *Neighbors for Pres. of Big and Little Creek Cmty.*, 159 Idaho at 186, 358 P.3d at 71.

## IV.    ANALYSIS

### A.  The district court did not err in concluding that CAL had standing.

The Respondents' arguments with respect to standing turn on two sub-issues. First, they contend that statutory amendments to Idaho business entity statutes made in 2015 abrogated associational standing for unincorporated nonprofit associations like CAL. Building on that argument, they argue that CAL, as a separate entity, is not an "affected person" as required for standing under LLUPA because it does not own real property. We conclude that CAL had associational standing to pursue this matter.

    1.  <u>Enactment of the Uniform Business Organizations Code did not change associational standing principles.</u>

In 2015, Idaho enacted the Uniform Business Organizations Code ("UBOC"). 2015 Idaho Sess. Laws 750. The UBOC is, first and foremost, an organizational statute, bundling multiple uniform business entity acts together into one title of the Idaho Code. To that end, UBOC includes the 2008 Uniform Unincorporated Nonprofit Association Act ("UUNAA"), as amended in 2011. *See* 2015 Idaho Sess. Laws 897. Respondents focus on a portion of that act, which provides that "[a]n unincorporated nonprofit association is an entity distinct from its members and managers." I.C. § 30-27-105(a). They argue that this language severed any connection

7

between an unincorporated nonprofit's members and itself, and thereby abrogated the doctrine of associational standing as applied to unincorporated nonprofits.

To the extent Respondents suggest that UUNAA—and its language concerning an unincorporated nonprofit's entity status—is new to the Idaho Code as of 2015, they are mistaken. As noted above, Idaho's adoption of the UBOC in 2015 was an organizational, not substantive, change in the law. And, on that note, UUNAA has been part of the Idaho Code in some form since 1993. *See* 1993 Idaho Sess. Laws 953 (adopting the UUNAA) (originally codified at I.C. § 53-701 to 53-717). The statutory language as it existed before adoption of UBOC provided that "[a] nonprofit association is a legal entity separate from its members for the purposes of determining and enforcing rights, duties, and liabilities in contract and tort" I.C. § 53-706(1) (2014). Both the language in the 2015 statutory amendments, and in the statutes as they existed before the adoption of UBOC, is an expression of the same departure from the common-law rule treating an unincorporated nonprofit association as an aggregate of its members. *Compare* Unif. Unincorporated Nonprofit Assoc. Act § 6 cmt. 1 (1996) (noting that the statutory language was a departure from the common law rule of aggregating members), *with* Unif. Unincorporated Nonprofit Assoc. Act § 5 cmt. (2011) (noting that the statutory language "is a reversal of traditional common law principles that treat . . . unincorporated entities under an aggregate theory"). Accordingly, we conclude that the enactment of UBOC in 2015 did not bring about any substantive change that would lead this Court to alter its application of the doctrine of associational standing to unincorporated nonprofit associations.

2. CAL has associational standing to pursue this matter.

Standing in Idaho has three fundamental tenets:

1. The doctrine of standing focuses on the party seeking relief and not on the issues the party wished to have adjudicated.

2. To satisfy the case or controversy requirement of standing, litigants generally must allege or demonstrate an injury in fact and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury.

3. A citizen and taxpayer may not challenge a governmental enactment where the injury is one suffered alike by all citizens and taxpayers of the jurisdiction.

*Boundary Backpackers v. Boundary Cnty.*, 128 Idaho 371, 375, 913 P.2d 1141, 1145 (1996) (alterations and quotations omitted) (citing *Miles v. Idaho Power Co.*, 116 Idaho 635, 641, 778 P.2d 757, 763 (1989)).

8

When a nonprofit asserts standing on behalf of its members, this Court utilizes a test for associational standing derived from the United State Supreme Court. *Selkirk-Priest Basin Ass'n, Inc. v. State ex rel. Andrus*, 127 Idaho 239, 241–42, 899 P.2d 949, 951–52 (1995) (quoting *Bear Lake Educ. Ass'n v. Bd. of Trs. of Bear Lake Sch. Dist. #33*, 116 Idaho 443, 448, 776 P.2d 452, 457 (1989)). Under that test, this Court recognizes that an association may have standing by virtue of its members when:

> (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit.

*In re Jerome Cnty. Bd. of Comm'rs*, 153 Idaho 298, 310, 281 P.3d 1076, 1088 (2012) (quoting *Beach Lateral Water Users Ass'n v. Harrison*, 142 Idaho 600, 604, 130 P.3d 1138, 1142 (2006)). A key inquiry under this test is "whether the association has alleged that at least one of its members face injury and could meet the requirements of standing on an individual basis." *Id.* at 308, 281 P.3d at 1086. LLUPA, in turn, limits standing to file a petition for judicial review to "affected person[s]." I.C. § 67-6521(1)(d). An affected person is defined as "one having a bona fide interest in real property" which could be adversely impacted by a land-use decision. I.C. § 67-6521(1)(a).

Below, the district court ruled that CAL satisfied the three-part associational standing test. Specifically, the district court found that CAL's membership consisted of landowners immediately adjacent to the gravel pit, those landowners had demonstrated numerous potential injuries during the administrative proceedings, and the relief sought by CAL did not necessitate the participation of individual members. As such, the district court ruled that CAL had associational standing to pursue the petition.

Upon independent review of the record, we affirm the district court's ruling. The record shows that CAL is comprised of individuals owning property adjacent to or nearby the gravel pit and proposed asphalt batch plant. Those members have alleged adverse consequences from the grant of the CUP including poor air quality, diminished property value, and noise pollution. Thus, CAL sufficiently alleged that at least one of its members is an "affected person" as required by LLUPA. Further, as its name suggests, CAL's opposition to the CUP is germane to its purpose of opposing the relocation of the Interstate asphalt plant to the Linscotts' gravel pit. Finally, CAL seeks to have the County's decision to approve the CUP reversed, which would not

9

require the individual participation of any member of CAL. Based on the above, we conclude that CAL had associational standing to pursue this matter and affirm the district court's ruling in that regard.

**B. The district court did not err in concluding that CAL filed its petition for judicial review within statutorily and judicially prescribed time limits.**

The Respondents make two arguments assailing the timeliness of CAL's petition for judicial review. First, they argue CAL's first petition was rejected and that CAL did not subsequently take adequate remedial measures to obtain a filing that would relate back to the date of its original filing. Second, the Respondents argue that even if CAL's initial filing was acceptable, it still fell outside the statutory timing requirements because reconsideration of a decision tolls the statutory clock rather than begins it. We disagree and conclude that CAL properly filed its petition for judicial review within the statutory time limit.

1. CAL's first petition for judicial review was erroneously rejected.

At the time CAL filed its petition, the Idaho Rule on Electronic Filing and Service provided that "[t]he electronic filing of a document is accomplished when a filer submits a document electronically to the court and the electronic filing system receives the document." I.R.E.F.S. (e)(1)(A) (2019). And, "for purposes of meeting the statute of limitations or any other filing deadlines" the date and time of the filing's submission serves as the filing date, "even if [the filing is] placed into an error queue for additional processing." I.R.E.F.S. 12(a)(1).[2] However, filings that do not comply with the requirements of the rule or court policy may be rejected and returned to the filer for correction. I.R.E.F.S. 13(a). If a filing has been rejected, the filer receives notice of the reason for the rejection and has three business days to correct and resubmit the filing so that it relates back to the original filing date. I.R.E.F.S. 13(c). When a rejected document is not corrected and resubmitted within three days, "the document will be deemed to have not been filed." I.R.E.F.S. 13(a). And, pursuant to Idaho Rule of Civil Procedure 84, a "failure to physically file a petition for judicial review . . . within the time limits prescribed by statute and these rules is jurisdictional and will cause automatic dismissal of the petition[.]" I.R.C.P. 84(n).

Electronically filed documents maybe rejected if they do not comply with the rules or court policy. I.R.E.F.S. 13(a). In this case, CAL's initial petition was rejected for lack of a case

---

[2] For ease of citation, the now-in-force Idaho Rules for Electronic Service and Filing are used where the language does not vary from the law in place at the time of CAL's initial filing.

information sheet. Every civil action must be accompanied by a case information sheet. I.R.C.P. 3(a), (d). An administrative appeal, however, is not a civil action within the meaning of Idaho Rule of Civil Procedure 3(a). *Euclid Ave. Tr. v. City of Boise*, 146 Idaho 306, 309, 193 P.3d 853, 856 (2008) (citing *McCoy v. State, Dep't of Health & Welfare*, 127 Idaho 792, 797, 907 P.2d 110, 115 (1995)). Instead, the procedures for judicial review of agency action are governed by the statute authorizing judicial review and Idaho Rule of Civil Procedure 84. *Id.* at 308–09, 193 P.3d at 855–56. Neither the relevant statutes, nor Rule 84, requires a petition for judicial review to be filed with a case information sheet. *See* I.R.C.P. 84(c) (listing the required contents of a petition for judicial review and excluding a case information sheet).

Therefore, CAL's initial filing was erroneously rejected pursuant to the Idaho Rules for Electronic Filing and Service for lack of a case information sheet because no such sheet was required under Idaho Rule of Civil Procedure 84(c) or LLUPA. As such, CAL's first filing was proper and the date of that filing is the operative date for application of the statutory twenty-eight-day deadline. Because the initial filing was correct, we need not address CAL's subsequent efforts to correct its rejected filing or whether those efforts satisfied the requirements of the Rules on Electronic Filing and Service.

2. <u>Because the twenty-eight-day filing period began when the County issued its decision on reconsideration, CAL's petition was timely filed.</u>

Considering the twenty-eight-day deadline, the Respondents argue that it began to run on the date of the County's decision to issue the CUP, January 14, 2019, and was only tolled by reconsideration of that decision. We find this argument unpersuasive as the statutory text and court rules make clear that the twenty-eight-day filing requirement begins following a decision on reconsideration.

LLUPA provides, in pertinent part, that an affected person may file a petition for judicial review twenty-eight days "after all remedies have been exhausted under local ordinances." I.C. § 67-6521(1)(d). Here, the local ordinances set forth the procedures required to exhaust administrative remedies. *See* BCRC §§ 12-261 to 12-263. Relevant to this case, the ordinances provide that an affected person seeking judicial review must first file a motion for reconsideration and that "failure to seek reconsideration is also a failure to exhaust administrative remedies." BCRC § 12-263. LLUPA has a provision to the same effect, which states that a person seeking judicial review must "first seek reconsideration of the final decision" within fourteen days and that the twenty-eight-day filing requirement "is tolled until the date of

11

the written decision regarding reconsideration[.]" I.C. § 67-6535(2)(b). Finally, LLUPA indicates that the procedures for judicial review of a land use action are the same as those set out in IDAPA. I.C. § 67-6521(1)(d).

The procedures for judicial review under IDAPA require a petition to be filed within twenty-eight days "of the service date of the final order . . . or, if reconsideration is sought, within twenty-eight (28) days after the service date of the decision thereon." I.C. § 67-5273(2). IDAPA also provides that its judicial review provisions apply "unless other provision[s] of law [are] applicable to the particular matter." I.C. § 67-5270(1). Under IDAPA, a "provision of law" includes statutes and court rules. I.C. § 67-5201(17).

As to applicable court rules, Idaho Rule of Civil Procedure 84, which governs actions for judicial review of agency action, provides:

> [i]f the decision to be reviewed is issued by an agency with authority to reconsider its decision and a timely motion for reconsideration is filed, then the time for filing the petition for judicial review is terminated and commences to run from . . . the date of any decision on reconsideration.

I.R.C.P. 84(b)(1)(B)(i).

Based on the forgoing, we conclude that the twenty-eight-day filing requirement did not begin until the County issued its decision on reconsideration of the CUP. That decision was issued March 25, 2019. CAL successfully filed its petition for judicial review twenty-five days later on April 19. Thus, CAL met the statutory filing deadline and the district court had jurisdiction to consider the petition for judicial review of the CUP.

**C. The district court did not err in refusing to dismiss the petition for judicial review because CAL did not serve the Linscotts or Interstate.**

The Respondents argue that CAL failed to timely serve both the Linscotts and Interstate with its petition for judicial review and that the petition should have been dismissed as a consequence. We conclude otherwise and affirm the district court's ruling that this error was harmless.

Idaho Rule of Civil Procedure 84 governs petitions for judicial review of agency action and provides that "the petitioner must serve copies of the notice of petition for judicial review upon the agency whose action will be reviewed and all other parties to the proceeding before the agency[.]" I.R.C.P. 84(d). That rule further provides that, other than filing the petition, "[f]ailure of a party to timely take any other step in the process for judicial review will not be deemed jurisdictional, but may be grounds only for such other action or sanction as the district court

12

deems appropriate, which may include dismissal of the petition for review." I.R.C.P. 84(n). IDAPA is silent as to service requirements but does define a "party" as "each person or agency named or admitted as a party, or properly seeking and entitled as of right to be admitted as a party." I.C. § 67-5201(13).

This Court disregards "all errors and defects that do not affect any party's substantial rights." *Matter of Estate of Hirning*, 167 Idaho 669, 677, 475 P.3d 1191, 1199 (2020) (quoting *Matter of Doe*, 163 Idaho 565, 571, 416 P.3d 937, 943 (2018)); *see also* I.R.C.P. 61. A right is substantial if it could impact the outcome of the litigation. *Hirning*, 167 Idaho at 677, 475 P.3d at 1199 (citing *Fonseca v. Corral Agric., Inc.*, 156 Idaho 142, 149, 321 P.3d 692, 699 (2014)).

Here, as the applicants for the CUP, both the Linscotts and Interstate were parties before the agency as contemplated by Idaho Rule of Civil Procedure 84. Thus, CAL was required to serve them with its petition for judicial review. However, neither the Linscotts nor Interstate suffered any prejudice from the lack of service. Both parties were allowed to intervene early in the proceedings and had their positions heard and their issues resolved by the district court. CAL did not gain an appreciable advantage in the litigation and we cannot say that the failure to serve had a discernable effect on the outcome of the case. Accordingly, we affirm the district court's ruling that the error was harmless.

**D. The district court did not err in determining that it could not consider the validity of the Amendment to BCRC section 12-336 on judicial review.**

In ruling on CAL's petition for judicial review, the district court determined that it could not consider the validity of the Amendment authorizing asphalt batch plants in gravel pits because it was legislative action and a petition for judicial review cannot also include a declaratory action. CAL argues that the district court could properly consider the validity of the Amendment because the posture of the case would not require the district court to declare the Amendment void or invalid. CAL arrives at this conclusion by noting that LLUPA and IDAPA allow for the reversal of a land-use decision that is made "in excess of the statutory authority" or "in violation of constitutional or statutory provisions." I.C. § 67-5279(3)(a)–(b) (This IDAPA provision is incorporated into a judicial review of a land use decision by the LLUPA, I.C. §§ 67-6521(1)(d) and 67-6535(3)). In short, CAL argues that the district court could reverse the CUP as in excess of statutory authority or in violation of statutory provisions because it was based on a void Amendment, without having to technically declare the Amendment void. We disagree and affirm the district court's ruling on this issue.

The "[p]romulgation or enactment of general zoning plans and ordinances is legislative action." *Burt v. City of Idaho Falls*, 105 Idaho 65, 67, 665 P.2d 1075, 1077 (1983) (quoting *Cooper v. Bd. of Cnty. Comm'rs*, 101 Idaho 407, 409, 614 P.2d 947, 949 (1980)). A legislative land-use action is not subject to direct judicial review in the same manner as a land-use decision but may be challenged through a declaratory action. *Id.* at 66 n.2, 665 P.2d at 1076 n.2. "Actions seeking . . . declaratory relief may not be combined with petitions for judicial review under IDAPA." *Euclid Ave. Tr. v. City of Boise*, 146 Idaho 306, 309, 193 P.3d 853, 856 (2008).

We conclude the district court did not err in determining that it could not consider the validity of the Amendment on judicial review of the CUP. The enactment of the Amendment was a legislative action, and its validity may only be challenged by a declaratory action. Although CAL did not specifically seek to have the Amendment declared void in its petition for judicial review, the question of the CUP's validity is inextricably linked with the validity of the Amendment. Indeed, the district court may not have been required to declare the Amendment void, but any legal conclusion it drew concerning the validity of the Amendment would likely have preclusive effect in other actions.[3] Since there is no route by which the district court could consider the Amendment's validity without offering some binding legal conclusion or an inappropriate advisory opinion on the subject, the district court did not err in to concluding that it could not consider the Amendment's validity during the proceedings below.

### E. The subsequent order and judgment declaring the Amendment void, issued in a different action, also voids the CUP.

After the district court's decision on the petition for judicial review, CAL filed a declaratory judgment action seeking to have the Amendment declared void. That action resulted in a judgment and order stipulated to between CAL and the County declaring the Amendment void. The Respondents challenge the effect of this declaration in two ways. First, they contend that the order and judgment declaring the Amendment void is not properly before this Court because it is not part of the record on appeal. Next, they argue that regardless of the

---

[3] Issue preclusion, or collateral estoppel requires a showing of five elements: "(1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation." *Ticor Title Co. v. Stanion*, 144 Idaho 119, 124, 157 P.3d 613, 618 (2007) (citation omitted). Here, any legal conclusion the district court reached vis-à-vis the validity of the Amendment likely would have preclusive effect and be, in effect, a declaratory action.

Amendment's subsequent invalidity, the Intervenors' rights vested when they applied for the CUP and cannot now be disturbed by a declaration that the Amendment is void.

    1. <u>This Court takes judicial notice of the judgment declaring the Amendment void.</u>

LLUPA incorporates the judicial review procedures of IDAPA. I.C. §§ 67-6521(1)(d) and 67-6535(3). IDAPA provides that "[j]udicial review of disputed issues of fact must be confined to the agency record[.]" I.C. § 67-5277. Yet, courts may take notice of "official acts of the . . . judicial department[] of this state[.]" I.C. § 9-101(3). This Court may take judicial notice of the judgment declaring the Amendment void as an official act of the judicial department of this state pursuant to Idaho Code section 9-101(3). As such, we take notice that the Amendment has been declared void, and, therefore, we may consider what effect, if any, that declaration has on the CUP.

    2. <u>The CUP is void because the Amendment is void *ab initio*.</u>

The Respondents argue that even if the Amendment is void, Interstate and the Linscotts had a vested right to have their CUP application reviewed according to the law in existence at the time they applied. Thus, we must address whether an ordinance adopted in excess of statutory notice procedures is void *ab initio* or merely voidable with respect to its prospective application.

The Respondents are correct that Idaho has adopted the minority position that a land-use applicant's rights are "measured under the law in effect at the time of the application." *S. Fork Coal. v. Bd. of Comm'rs of Bonneville Cnty.*, 117 Idaho 857, 861, 792 P.2d 882, 886 (1990) (citations omitted); *see also Taylor v. Canyon Cnty. Bd. of Comm'rs*, 147 Idaho 424, 436, 210 P.3d 532, 544 (2009). The policy undergirding this rule is "to prevent local authorities from delaying or withholding action on an application in order to change or enact a law to defeat the application." *Taylor*, 147 Idaho at 436, 210 P.3d at 544 (citation omitted). Thus, the rule is an outgrowth of the well-established principle that legislation does not ordinarily have retroactive effect. *See Cooper v. Bd. of Cnty. Comm'rs of Ada Cnty.*, 101 Idaho 407, 412, 614 P.2d 947, 952 (1980); *see also Ben Lomond, Inc. v. City of Idaho Falls*, 92 Idaho 595, 601, 448 P.2d 209, 215 (1968) (reasoning that the rule to apply the ordinance in effect at the time of the application is "in accord with the general rule that legislation generally acts prospectively only").

Yet, this case presents a different factual situation than those cases that gave rise to Idaho's rule. In all of the above cases, the Court considered the applicability of a subsequently enacted ordinance or comprehensive plan to a pending land-use application or zoning decision.

15

*See, e.g.*, *S. Fork Coal.*, 117 Idaho at 860, 792 P.2d at 885 (considering the applicability of a subsequently enacted ordinance to an application for a housing development); *Taylor*, 147 Idaho at 436, 210 P.3d at 544 (considering the applicability of a subsequently enacted comprehensive plan to a conditional re-zoning decision). In contrast, the question here is not whether a subsequently enacted provision of law should apply to the CUP application, but whether the subsequent declaration by a district court that the then-existing law was void invalidates the CUP.

The Respondents' arguments on this front are unavailing. Their proposed application of Idaho's rule would turn the rationale for that rule on its head. Instead of protecting property owners from a government body enacting after-the-fact legislation, the Respondents would allow a county or municipality to cement unlawfully enacted ordinances into law so long as they filed an application under that void ordinance before it was challenged. More importantly, the Respondents' arguments assume that the Amendment, though unlawfully adopted, had the force and effect of law at one time in the past. We hold otherwise.

This Court has already answered the question of what effect an ordinance, adopted in violation of the notice requirements of LLUPA, has in *Jerome County ex rel. Board of Commissioners for Jerome County v. Holloway*, 118 Idaho 681, 799 P.2d 969 (1990). That case bears a striking resemblance to the case at hand. In *Holloway*, a landowner challenged a special use permit issued to a nearby property to operate a dairy. *Id.* at 682, 799 P.2d at 970. The landowner argued that the permit was invalid because it conflicted with an amendment to local zoning ordinances, adopted two years prior, that prohibited the operation of a dairy within 1,000 feet of a home. *Id.* The dairy operator, in turn, argued that the amended ordinance was invalid because it was adopted in excess of the statutory notice requirements of Idaho Code section 67-6509. *Id.* The district court entered summary judgment in favor of the dairy operator and declared the amended ordinance void and unenforceable. *Id.* In affirming the district court's ruling, this Court reasoned that "the statutory notice and hearing [is] necessary in order to satisfy the requirements of due process and may not be dispensed with." *Id.* at 684, 799 P.2d at 972 (quoting *Citizens for a Better Gov't v. Cnty. of Valley*, 95 Idaho 320, 322, 508 P.2d 550, 552 (1973)). Furthermore, this Court emphasized that "[i]t is a well settled principle that notice and hearing requirements in zoning enabling acts are conditions precedent to the proper exercise of

16

the zoning authority," in affirming the district court. *Id.* (quoting *Citizens for a Better Gov't*, 95 Idaho at 322, 508 P.2d at 552).

We stay true to that well-settled principle today and hold that the Amendment, having been adopted in violation of Idaho Code section 67-6509, is void *ab initio*. The County did not satisfy the conditions precedent to exercising its statutory zoning authority. Therefore, the Amendment never had any force or effect. Accordingly, the law in existence at the time the Linscotts and Interstate applied for the CUP did not authorize the proposed use and the CUP is invalid.

**F. The district court erred in concluding that the County's interpretation and application of its zoning ordinances was not arbitrary, capricious, or an abuse of discretion.**

Although we hold that the CUP is void because it was based on the void Amendment, we address the County's application of its zoning ordinances in issuing the CUP because that analysis is necessary for our decision to award attorney's fees in this matter. The district court afforded the County deference in interpreting its own ordinances and ruled that it did not act arbitrarily, capriciously, nor did it abuse its discretion in concluding that it need not consider the Linscotts' gravel pit's compliance with nonconforming use ordinances. We disagree and conclude that the County's application of its zoning ordinances was arbitrary and capricious.

IDAPA provides that an agency decision may be overturned where that decision is "in violation of constitutional or statutory provisions" or "arbitrary, capricious, or an abuse of discretion." I.C. § 67-5279(3)(a), (d). LLUPA, in turn, requires that "[t]he approval or denial of any application . . . shall be based upon standards and criteria which shall be set forth in the . . . zoning ordinance or other appropriate ordinance[.]" I.C. § 67-6535(1).

Bonner County's zoning ordinances are contained in Title 12 of BCRC. *See* BCRC, tit. 12. That title provides that a permit "shall not issue . . . unless the intended uses of the buildings and land conform in all respects with the provisions of this title." BCRC § 12-130(A). Two chapters of that title form the backbone of the dispute between the parties.

First, with respect to nonconforming uses, BCRC establishes that uses which were lawful before enactment of the zoning code may be continued so long as those uses are not "enlarged upon, expanded or extended, nor . . . used as grounds for adding other structures or uses prohibited elsewhere in the same district or zone." BCRC § 12-340(D). Exceptions to the general prohibition on expanding nonconforming uses include: (1) "accumulated expansion by up to ten

percent" or (2) expansion by up to fifty percent with a conditional use permit so long as no additional land is acquired for the expansion. BCRC § 12-341(A). Finally, a nonconforming use can continue "so long as [it] remain[s] otherwise lawful" but the nonconforming use may not "extend[] to occupy a greater area of land than was occupied [when the grandfathered rights were established]" or "be moved in whole or in part to any portion of the lot or parcel other than that occupied [at the time the grandfathered rights were established]." BCRC § 12-343.

Second, with regard to conditional use permits, the BCRC requires a finding that "there is adequate evidence showing that the proposal is in accordance with the general and specific objectives of the [C]omprehensive [P]lan and this [T]itle[.]" BCRC § 12-223. And, under the void Amendment, an asphalt batch plant is a conditionally permitted use in a rural zone "only in association with an active gravel pit." BCRC § 12-336(22).

In reaching its decision to approve the CUP, the County reasoned that the asphalt plant was a separate use from the gravel pit and concluded that the nonconforming use provisions of BCRC did not apply. The County determined that the Amendment only required "an active gravel pit," not a gravel pit in conformity with the provisions of BCRC. As such, the County found, and no one disputes, that the Linscotts' gravel pit is active and issued the CUP without considering whether the issuance of the CUP would violate the nonconforming use provisions of BCRC. CAL maintains that this interpretation of BCRC, and the decision to issue the CUP, is arbitrary, capricious, and an abuse of discretion.

The district court determined otherwise. While the district court acknowledged CAL's "extensive argument concerning the gravel pit's violation of Bonner County Ordinances," it reasoned that since no conclusion had been reached on the gravel pit's status below, it could not conclude on review that the gravel pit violated BCRC. Without a determination that the gravel pit violated BCRC, the district court afforded the County deference in its interpretation and application of its own ordinances and ruled the County did not err in granting the CUP. We conclude this deference was not warranted for the County's unlawful machinations in approving the CUP.

On appeal, as it did below, CAL has presented an extensive list of evidence supporting its position that the gravel pit does not comport with the nonconforming use provisions of BCRC. For instance, CAL argues that the gravel pit has expanded by between 230 and 500 percent since its grandfathered rights were created; the gravel pit has expanded on to additional parcels not in

18

use when the grandfathered rights were established; the gravel pit is not "otherwise lawful" because it has violated Idaho Department of Lands regulations and the Idaho Surface Mining Act; and that the addition of an asphalt batch plant would only further enlarge or expand the nonconforming use. In sum, CAL has presented a detailed account of how the Linscotts' gravel pit is in violation of BCRC. However, the Respondents argue that a judicial finding that the Linscotts' gravel pit violates BCRC, without any underlying enforcement action by the County, would violate their due process rights.

While we agree with the Respondents that it is for the County to decide whether the gravel pit is in violation of BCRC, we need not make such a finding to conclude that the County acted in a manner that was arbitrary and capricious because it relied on an unreasonable interpretation of BCRC. For instance, BCRC states that no permit may be issued "unless the intended uses of the buildings and land conform in all respects with the provisions of [Title 12]." BCRC § 12-130(A). Title 12, which contains the County's zoning ordinances, prohibits the expansion or enlargement of nonconforming uses with few exceptions, none of which are applicable here. BCRC §§ 12-340 to 12-343. Further, it requires that the County must find adequate evidence that the conditional use permit is in accordance with the objectives of the comprehensive plan and with the zoning code. BCRC § 12-223.

Notwithstanding this language in BCRC, the County determined that the nonconforming use provisions of BCRC inapplicable. The County's conclusion that legal status of the gravel pit was of no consequence in granting the CUP is belied by its statements indicating that the asphalt plant would be located in an "active, *legal nonconforming* gravel pit." In addition, far from being a separate and distinct use, the application for the CUP indicated the asphalt plant "is really an accessory use to the existing mining use." It appears from the record that one of the primary rationales for issuing the CUP was to relocate the batch plant closer to the mining operation upon which it relied. Thus, whether the CUP intensified or enlarged the use of the gravel mine is an inescapable question that the County failed to address. And, given the extensive evidence presented by CAL below, it is difficult to imagine how a factfinder could conclude that the gravel pit is in compliance with the nonconforming use provisions of BCRC. However, that is a factual question reserved for the County in the first instance. In any event, we conclude that the County acted in a manner that was arbitrary and capricious in refusing to address the gravel pit's nonconforming status when considering the CUP application. Accordingly, we conclude that the

19

district court erred in affirming the County's decision to grant the CUP because that decision was arbitrary and capricious.

**G. CAL is awarded attorney's fees and costs on appeal.**

CAL seeks attorney's fees pursuant to Idaho Code section 12-117 against the County and the Intervenors as parties aligned with the County. Interstate has requested fees under Idaho Code section 12-121 against CAL. Neither the County nor the Linscotts seek attorney's fees in this matter but maintain that CAL is not entitled to any attorney's fees award.

1. Attorney's fees under Idaho Code section 12-117.

Idaho Code section 12-117 provides for the award of attorney's fees "in any proceeding involving as adverse parties a state agency or a political subdivision and a person . . . if [the court] finds that the nonprevailing party acted without a reasonable basis in fact or law." I.C. § 12-117(1). Section 12-117 defines a political subdivision to include a county. I.C. § 12-117(6)(d).

In addition, CAL relies on *Rural Kootenai Organization, Inc. v. Board of Commissioners*, 133 Idaho 833, 993 P.2d 596 (1999), for the proposition that attorney's fees under section 12-117 may also be awarded against intervening parties. In *Rural Kootenai*, this Court looked to federal precedent interpreting Federal Rule of Civil Procedure 54(d) and was persuaded to award *costs* against an intervening party under Idaho Appellate Rule 40(a) when the intervening party was very active in the appeal. 133 Idaho at 846, 993 P.2d at 609. Further, this Court clarified in *Neighbors for Responsible Growth v. Kootenai County*, 147 Idaho 173, 207 P.3d 149 (2009), that any suggestion in *Rural Kootenai* that section 12-117 could provide a basis for an attorney's fees award for or against an intervenor was dicta. 147 Idaho at 177, 207 P.3d at 153. This Court went on to reason that section 12-117 requires as adverse parties a county and a person and "decline[d] to infer that the Legislature intended that one person might recover from another person under I.C. § 12-117 solely because of the presence of a governmental entity in the litigation." *Id.* at 177–78, 207 P.3d at 153–54. As such, Idaho Code section 12-117 does not provide a basis upon which CAL can recover attorney's fees against either the Linscotts or Interstate, as they are not governmental entities.

As between CAL and the County, however, we conclude that an award of attorney's fees under 12-117 is warranted in this matter. Initially, we conclude that the County is not the prevailing party on appeal because the ultimate issue in this matter, the validity of the CUP, was

20

determined adversely to it. Next, we also conclude that the County acted without a reasonable basis in law. The County not only applied its own zoning ordinances in a manner that was arbitrary and capricious in issuing the CUP, but it also defended its application of those ordinances on appeal after stipulating that the Amendment was void. As such, we award CAL reasonable attorney's fees against the County.

### 2. Attorney's fees under Idaho Code section 12-121.

Interstate has requested attorney's fees under Idaho Code section 12-121 against CAL. They assert that CAL acted "frivolously, unreasonably or without foundation" by ignoring the scope of judicial review of agency action and by advancing arguments concerning the void order and judgment.

Idaho Code section 12-121 allows for the award of attorney's fees for a prevailing party when a case or appeal has been "brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121. In this matter, CAL is the prevailing party, having successfully challenged the County's decision to issue the CUP. Moreover, Idaho Code section 12-117 is the exclusive basis for awarding attorney's fees in a matter with a person and a governmental entity as adverse parties. *City of Osburn v. Randel*, 152 Idaho 906, 909, 277 P.3d 353, 356 (2012) (citation omitted). Thus, even if Interstate were a prevailing party, it would not be entitled to attorney's fees under section 12-121.

### 3. Costs

While we hold that attorney's fees cannot be awarded against either Interstate or the Linscotts under Idaho Code section 12-117 because they are not governmental entities adverse to CAL, we conclude that the Intervenors should bear the burden of costs on appeal with the County.

A prevailing party is allowed costs on appeal as a matter of course. I.A.R. 40(a). In *Neighbors for Responsible Growth*, we clarified that Idaho Appellate Rule 40 provides the basis for an award of costs against intervening parties in an appeal from a land-use decision irrespective of the availability of attorney's fees under section 12-117. 147 Idaho at 177, 207 P.3d at 153 (awarding costs to a prevailing party against intervening parties after concluding that attorney's fees were unavailable because the prevailing party was not adverse to a governmental entity). As such, we award CAL costs on appeal as a matter of course. Since the Intervenors

played an active part in this litigation, they shall share the burden of appellate costs with the County. *See Rural Kootenai*, 133 Idaho at 846, 993 P.2d at 609.

## V. CONCLUSION

The decision of the district court is affirmed in part and reversed in part. The CUP authorizing the relocation of the Interstate asphalt batch plant to the Linscotts' gravel mine is invalid because it is based on a void amendment to Bonner County Code. Further, the County acted in a manner that was arbitrary and capricious in refusing to address the gravel pit's compliance with the nonconforming use provisions of BCRC. We award CAL reasonable attorney's fees on appeal against the County. We also award CAL costs on appeal, to be shared among the County, Interstate, and the Linscotts.

Chief Justice BEVAN, and Justices BRODY, STEGNER, and MOELLER **CONCUR.**