193 P.3d 853

**EUCLID AVENUE TRUST, Trustee Services, Inc., Trustee, Plaintiff–Appellant,**

v.

**CITY OF BOISE, Defendant–Respondent.**

No. 33974.

Supreme Court of Idaho.
Boise, June 2008 Term.

Sept. 23, 2008.

Neal & Uhl, PLLC, Boise, for appellant. Gary L. Neal argued.

Boise City Attorney's Office, Boise, for respondent. Scott Muir argued.

J. JONES, Justice.

On October 4, 2005, the Euclid Avenue Trust ("Euclid") caused three "skinny" houses to be moved onto three adjacent city lots without waiting for the City of Boise to act on applications for building permits it had submitted seven days earlier. The City determined the unpermitted houses were a nuisance and ordered Euclid to abate the nuisance. It also adopted an emergency ordinance imposing stricter requirements for building permits for "substandard" residential lots like Euclid's. Euclid eventually complied with the new requirements, but also filed a complaint seeking judicial review and civil damages. The district court disposed of all Euclid's claims on summary judgment. Euclid appealed to this Court.

**I.**

On September 27, 2005, Northstar Development Co., LLC, acting as agent for Euclid, submitted three applications to the City of Boise for building permits to place three "skinny" houses on three small lots on Euclid Avenue. The City did not immediately act upon the applications, finding them to be incomplete because two of the three lacked parcel numbers. Instead, the City placed the applications in a "fail" or "hold" box, awaiting the missing information.

On October 4, seven days after the applications were submitted, the houses were moved onto existing foundations on the three lots.

Northstar's principal, Michael Harrison, was criminally cited the next day for creating a nuisance by moving the houses without permission. On October 6, the City issued Euclid a written notice to abate the nuisance.

On October 9, the City passed and adopted an emergency ordinance, Boise City Code § 11.03.09, which established a temporary building moratorium for all substandard residential lots, and required a staff-level design review permit before a property owner could apply for a building permit for such a lot. Euclid's lots fell into the substandard residential lot category and were subject to the ordinance. Euclid submitted design review applications in mid-November.

The City sent Euclid an amended notice to abate on November 28. The Boise City Council conducted a hearing on December 6, found the Euclid houses to be a nuisance, and gave Euclid ten days to abate the nuisance. The abatement order was stayed, first by the court and then by agreement of the parties.

On December 23, staff approved the design review applications submitted by Euclid, but the process was delayed by separate appeals that were eventually settled through mediation. On May 2, 2006, Euclid submitted building plans. Shortly thereafter, the City issued building permits, which allowed the houses to remain on their respective lots.

Euclid filed a Complaint, Petition for Judicial Review and Request for Jury Trial on December 12, 2005. The pleading sought judicial review of the City's actions, a declaration that the emergency ordinance was invalid, mandatory relief and civil damages. A few days after the complaint was filed, Euclid filed a tort claim. Euclid filed an amended complaint in January, adding a due process claim. The City moved to dismiss on January 11, 2006, and later filed a motion for summary judgment. The district court granted the City's motion for summary judgment in three separate orders. Euclid appealed to this Court.

**II.**

We consider two questions on appeal. The first is whether an administrative appeal and

a civil action may be combined in one proceeding. We hold that the two may not be combined and that this Court will review the appeal in accordance with the standards applicable to the filing fee category designated on the initial filing in the trial court. Here, the designated fee category indicates the case to be a civil action. We then consider whether the district court properly granted summary judgment against Euclid on its civil claims.

## A.

■ This proceeding was commenced with a pleading entitled Complaint, Petition for Judicial Review and Request for Jury Trial. The fee category indicated on the complaint is A1–a civil complaint for more than $1,000. The document did, indeed, seek a damage award, but also sought declaratory relief, a writ of mandamus, and judicial review. The text of the pleading dealt primarily with the issue of judicial review, but it was not filed under fee category R2, which includes petitions for judicial review. There seems to be an increasing tendency, particularly in land use cases, for counsel to combine civil damage claims with their administrative appeal. This Court has yet to directly rule on the propriety of this practice, although in *Cobbley v. City of Challis*, 143 Idaho 130, 139 P.3d 732 (2006) we disapproved of a single filing in a somewhat related situation.

In *Cobbley*, the plaintiffs attempted to add a request for judicial review of a county road validation decision under I.C. § 40–203A to an on-going suit for damages for a city's alleged failure to properly maintain the road. This Court observed that "a petition for judicial review of a road-validation decision of a local governing board is a distinct form of proceeding and cannot be brought as a pleading or motion within an underlying civil lawsuit." *Id.* at 133, 139 P.3d at 735. We stated, "[j]udicial review of an administrative decision is wholly statutory; there is no right of judicial review absent the statutory grant."

*Id.* (citing Idaho R. Civ. P. 84(a)(1)). The Court noted that the appendix to the Rules of Civil Procedure "affirms the distinctive nature of the petition for judicial review by giving it its own fee category." *Id.* By virtue of the fact that civil damage claims and petitions for judicial review have separate and distinct fee categories, one would assume that either would be initiated by a separate filing and that a combined filing would not be looked upon with favor by the Court.

The Local Land Use Planning Act (LLUPA) provides that "[a]n applicant denied a permit or aggrieved by a decision" may seek judicial review under the provisions of the Idaho Administrative Procedure Act (IDAPA), Chapter 52, Title 67, Idaho Code. I.C. § 67–6519(4). "Unless otherwise provided by statute, judicial review of disputed issues of fact must be confined to the agency record." I.C. § 67–5277. IDAPA provides the scope of review and the type of relief available in I.C. § 67–5279—"If the agency action is not affirmed, it shall be set aside, in whole or part, and remanded for further proceedings as necessary." By failing to mention any further remedial measures, it is reasonable to conclude that combining a claim for civil damages with a petition for judicial review is not a permissible course of action. *See Local 1494 of the Int'l Ass'n of Firefighters v. City of Coeur d'Alene*, 99 Idaho 630, 639, 586 P.2d 1346, 1355 (1978) (where a statute specifies certain things, the designation of such things excludes all others).[1]

Rule 84(a)(1) of the Idaho Rules of Civil Procedure provides some additional guidance. That rule provides:

> The procedures and standards of review applicable to judicial review of state agency and local government actions shall be as provided by statute. When judicial review of an action of a state agency or local government is expressly provided by statute but no stated procedure or standard of review is provided in that statute, then Rule 84 provides the procedure for the district Court's judicial review. Actions of

---

1. I.C. § 67–5255 does allow a person to petition an agency for a declaratory ruling in certain circumstances. It may be that one who requested a declaratory ruling on a land use issue before a local governing body would have statutory standing to combine an appeal of the same with an appeal of a land use decision under LLUPA. However, we are not presented with that situation here and we need not address it.

state agencies or officers or actions of a local government, its officers or its units are not subject to judicial review unless expressly authorized by statute. Rule 84 does not apply to the issuance of writs of mandate, prohibition, quo warranto, certiorari, review, or other common law or equitable writs, but *petitions for judicial review under this rule may be filed with or in the alternative to petitions for these common law or equitable writs.*

(emphasis added). Rule 84(a)(1) specifically allows one to combine a petition for judicial review with a request for common law or equitable writs, but says nothing about seeking declaratory or monetary relief in a judicial review proceeding. When combination of distinct types of proceedings is permitted, it is done pursuant to statute or court rule.

Specific to this situation, Idaho R. Civ. P. 8(e)(2) allows a party to state as many separate claims or defenses as the party has in a pleading. However, it says nothing about including matters on appeal. Indeed, we have often held that an administrative appeal "does not constitute a 'civil action' as defined by I.R.C.P. 3(a)." *McCoy v. State, Dep't of Health & Welfare,* 127 Idaho 792, 797, 907 P.2d 110, 115 (1995).

■ The separation of civil actions and administrative appeals is supported by good policy underpinnings. After all, one proceeding is appellate in nature and the other is an original action. They are processed differently by our courts. Discovery is rarely available in a judicial review proceeding. The review is to be conducted on the record, absent specific authorization. I.C. § 67–5276. The standards for determining an outcome are specified by statute (I.C. § 67–5279), whereas this is not the case with actions seeking declaratory or monetary relief. The confusion resulting from a conglomerated proceeding is apparent here. While Euclid primarily styled this as a proceeding seeking judicial review, the matter was determined upon three orders granting summary judgment, hardly what one would expect in a review on the record. Thus, we are constrained to hold that actions seeking civil damages or declaratory relief may not be combined with petitions for judicial review under IDAPA.

Euclid's initial filing in district court indicated a fee category of A1 and, thus, the Court will take Euclid at its word and consider the appeal as an appeal of a civil action. Had the filing category been designated as R2, we would again take Euclid at its word and determine the matter as an administrative appeal. It is likely the district court viewed the case as a civil action because it determined the claims under the summary judgment standard. We will do likewise.

### B.

Euclid asserted five causes of action in its amended complaint. It requested in the respective causes: (1) that the court review and invalidate the City's "rule" under which it deemed the September 27 applications "as not accepted"; (2) issuance of a writ of mandate requiring the City to issue building permits (if the court found for Euclid on the first cause of action); (3) that the court review the designation of the buildings as nuisances and enjoin the City from requiring their removal; (4) that the court invalidate the emergency ordinance; and (5) a determination that the City violated Euclid's due process rights. The district court dismissed all of the claims in three orders granting partial summary judgment. The first and second causes of action were dismissed based on the court's determination that the applications were incomplete and the City had no affirmative duty to notify Euclid of that fact. The third cause of action, insofar as it sought damages, was dismissed for failure to comply with the notice provisions of the Idaho Tort Claims Act, since Euclid filed suit for damages prior to filing its notice of tort claim. *See* I.C. §§ 6–906, 909 & 910. Summary judgment was granted on the fourth and fifth causes of action because those claims were deemed to be moot.

On appeal Euclid claimed error in four respects: (1) that the emergency ordinance was defective; (2) that the City was required to accept the building permit applications submitted on September 27; (3) that the emergency ordinance did not apply to the applications submitted on September 27; and

(4) that the district court improperly dismissed Euclid's damage claim. The first three assignments of error will be considered together to determine if they present a justiciable controversy and then we will consider the issue of damages.

**i.**

■ Euclid's first three assignments of error pose essentially academic questions. Euclid claims that the emergency ordinance was not properly enacted and that it could not have applied to its initial set of applications. However, Euclid submitted a second set of applications, based on the provisions of the emergency ordinance, and that set of applications was eventually approved, allowing Euclid to keep the three skinny houses on the three skinny lots. The question of whether the City was required to accept the first set of applications will have no bearing on whether the houses stay on the lots. The houses are now legally settled upon their respective lots. It is essentially pointless to address Euclid's first three assignments of error because those issues have been mooted by the actions of the parties.

■ "A case is moot if it presents no justiciable controversy and a judicial determination will have no practical effect upon the outcome." *Cowan v. Bd. of Comm'rs of Fremont County*, 143 Idaho 501, 509, 148 P.3d 1247, 1255 (2006) (quoting *Goodson v. Nez Perce Bd. of County Comm'rs*, 133 Idaho 851, 853, 993 P.2d 614, 616 (2000)). In *Cowan*, the Court found a case moot where a developer filed a second application instead of pursuing the first application he had filed. The developer notified the county board he intended to act under the second application rather than the first. *Id.* More than five years later, a challenger to the development alleged violation of due process and Idaho statutes with regard to the first application. The Court found the question moot because the first application was effectively nullified by the developer's action and by the Board's decision to act under the second application. *Id.*

Here, Euclid essentially nullified its first set of applications by submitting a second set of applications, which were eventually approved. Thus, no final action was either necessary or taken on the first set of applications. The parties essentially resolved any disputes regarding the applicable ordinance, based on the submission and approval of the second set of applications. The first three assignments of error are moot.

**ii.**

■ Euclid's damage claim is problematic. While Euclid claims in its opening brief that it was deprived of a valuable property interest without due process of law, this argument appears to be directed to its request for administrative relief, rather than to a claim that it is entitled to recover damages. Indeed, Euclid failed to specify the damages it allegedly sustained as a result of the City's actions. The sum total of Euclid's argument on the issue of monetary damages consisted of less than one page in its opening brief. Euclid states, "If the District Court decision on the propriety of not accepting the applications is reversed, Euclid Avenue is entitled to reassert its claim for damages in this litigation." Since we have determined this particular issue to be moot and declined to accept Euclid's invitation to reverse the district court, there is no need to consider the issue of damages.

**C.**

■ The City contends it is entitled to an award of fees under I.C. § 12–117(1). I.C. § 12–117(1) allows the court to award attorney fees and other expenses where the court finds a person pursued an action against a city without reasonable basis in fact or law. An award of attorney fees is appropriate here because this Court is left with the abiding feeling that the appeal was pursued without reasonable basis in fact or law. As mentioned above, most of the issues were moot. In oral argument before the Court, Euclid's counsel essentially conceded that the appeal was primarily for the purpose of making a point and that any claim for damages was rather tenuous. In any event, that issue was conceded away in Euclid's brief. Thus, the City is entitled to its attorney fees on appeal.

## III.

We affirm the district court. Costs and attorney fees are awarded to the City.

Chief Justice EISMANN, and Justices BURDICK, W. JONES and HORTON concur.

