# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48042

STEPHAN L. BYRD and ERIKA MULLINS, )
)
   Petitioners-Appellants, )
)
v. )         Boise, September 2021 Term
)
THE IDAHO STATE BOARD OF LAND )     Opinion filed: March 2, 2022
COMMISSIONERS, THE IDAHO )
DEPARTMENT OF LANDS, STEVE )     Melanie Gagnepain, Clerk
COFFEY, and CAL LARSON, )
)
   Respondents. )

Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County. John C. Judge, District Judge.

The judgment of the district court is <u>affirmed</u>.

John F. Magnuson, Coeur d'Alene, for Appellants. John F. Magnuson argued.

Featherston Law Firm, Chtd., Sandpoint, for Respondents Steve Coffey and Cal Larson. Brent C. Featherston argued.

Lawrence Wasden, Idaho Attorney General, Boise, for Respondents The Idaho State Board of Land Commissioners and The Idaho Department of Lands. Angela Kaufmann argued.

---

BRODY, Justice

This action arises out of an encroachment permit denied by the Idaho Department of Lands acting on behalf of the Idaho State Board of Land Commissioners. Stephan Byrd and Erika Mullins jointly filed an application for an encroachment permit with the Idaho Department of Lands to add boat lifts to their existing two-family dock on Priest Lake. Neighbors Cal Larson and Steven Coffey filed objections to this application, arguing that Coffey owns a strip of land between the ordinary high water mark of Priest Lake and the waterward boundary lines of the Appellants' properties. Following an administrative hearing, the Department denied the encroachment permit upon concluding that the record failed to show by a preponderance of the evidence that Byrd and Mullins are littoral property owners with corresponding littoral rights, a key requirement to build

1

or enlarge encroachments on the lake under Idaho's Lake Protection Act, I.C. §§ 58-1301 to 58-1312. We affirm the district court's judgment to uphold the Department's order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1951, the Diamond Match Company conveyed a large lakefront parcel to William and Mary Taylor, with the deed describing the property "to the established meander corner on lake shore; thence along lake shore line at highwater mark." The warranty deed also specified that the conveyance included "all legal interest in the lake shore fronting" the parcel. In 1967, the Taylors created three contiguous parcels out of a section of their property: Parcel T-9 (currently owned by Cal Larson), Parcel T-10 (currently owned by Erika Mullins), and Parcel T-11 (currently owned by Stephan Byrd). The deeds for each of these parcels contain roughly the same waterward boundary description: commencing from "an iron pin on the shore of Priest Lake" and extending "along the shore of Priest Lake" to additional iron pin markers "on the shore of Priest Lake." The properties have always been marketed as "waterfront" properties. They have also been treated as waterfront properties by Bonner County for tax and mapping purposes over the years. Until 2015, prior owners of the Byrd and Mullins parcels used the lakefront for swimming, wading, and other littoral uses without challenge.

The Taylors later created a fourth parcel out of their property: Parcel T-12, which was conveyed to the Chappels. This warranty deed differed from the earlier conveyances in its property description, stating: "to an iron pin on the shore of Priest Lake . . . thence along the shore of Priest Lake," "TOGETHER WITH the lands lying between the side lot lines of the above described property extended to the mean high water line of Priest Lake." Finally, the Taylors conveyed their remaining land to Ziegler Lumber Co., and the warranty deed contained similar language to the Chappel deed: the property line extends "to an iron pin" and thence "along the shore of Priest Lake," "TOGETHER WITH the lands lying between the side lot lines of the above described property extended to the mean high water line of Priest Lake." This property description also excepted the previously sold parcels currently owned by Larson, Mullins, Byrd, and Chappel respectively. Steven Coffey purchased Parcel T-12 from Ziegler Lumber in 1993 with the same legal description set forth in his warranty deed.

The record lacks the complete history of parcel conveyances and family transitions over the years, but in 2015, Mullins and Byrd each obtained their parcels, becoming adjacent neighbors between Larson and Coffey. Byrd and Mullins's predecessors had these parcels (T-10 and T-11)

surveyed in 2015 as part of the sale. A note on this 2015 survey reads: "The metes and bounds description for the subject parcels (Warranty Deed Instrument No. 205177 dated August 10th, 1967) makes calls along the shore of Priest Lake – this is assumed to mean the ordinary high water line of Priest Lake as the shoreline and ordinary high water line are commonly referred to mean the same."

In 2016, Byrd and Mullins filed an encroachment permit application with the Idaho Department of Lands (hereinafter, the "Department") to build a joint-family dock. The Department approved the application without a hearing. Byrd and Mullins received their permit for a two-family dock (Permit No. L-97-S-1171) in January 2016 and later constructed the dock pursuant to this permit. Coffey now claims he wrote to the Department to object to this original encroachment permit application: " . . . we objected hard and we went to Carl Ritchie who was at the Bureau of Land, Idaho Departments of Lands at the time and we went back and forth with quite a few letters on this matter and he did not give us due process at the time. We gave him copies of the deeds, we gave him copies of plat maps, all sorts of things." No such letters from Coffey are in the record on appeal. However, there is one letter in the agency record from Carl Ritchie, a Department employee, to Coffey. The letter seems to answer Coffey's questions concerning (1) dock length variances and (2) a reference to *Ross v. Dorsey*, 154 Idaho 836, 303 P.3d 195 (2013), a case involving a Priest Lake dispute where Ritchie said a homeowner was "under the false pretense that he owned his lake front." The letter does not specifically refer to, or address, an express objection made by Coffey to the dock's encroachment permit, but it shows Byrd and Mullins were aware of Coffey's claim to ownership along the lake front. Ritchie wrote, "Mr. Byrd and Mr. Mullins made reference to your claim of ownership to a strip of beach fronting the lake side of their lots. If your claim is valid and judged by a court of law in your favor. Just like Mr. Dorsey, the Byrd/Mullins encroachment permit would be rescinded."

In May 2018, Byrd and Mullins filed a second encroachment permit application with the Department, this time to add two boat lifts to their existing dock and to replace two mooring buoys. Adjacent neighbors Larson and Coffey—whose properties bordered Mullins and Byrd's properties respectively—filed their objections with the Department. Coffey and Larson asserted that Byrd and Mullins were not littoral owners on Priest Lake, and, thus, should not have an encroachment much less enlarge it with the boat lifts. Coffey submitted surveys in support of his claim to show that a strip of land may exist between the parcels and the ordinary high water mark. Coffey also

3

stated he did not object to the buoys' replacement—he only objected to the original dock and proposed boat lifts. Following this objection, Byrd and Mullins had a survey completed at the request of a Lands Resource Specialist with the Department. In the 2018 survey, the stretch of shore between the iron pins and the water's edge is approximately 20 feet at its narrowest point and 34 feet at its widest.

After a hearing on the issues, the Department issued a preliminary order that denied the encroachment permit for lack of sufficient evidence showing Byrd and Mullins were littoral owners by a preponderance of the evidence. In an effort to minimize further application difficulties, Byrd and Mullins then withdrew their application to "tak[e] such action, outside the [Department], to 'clean up' [their] littoral ownership, which [they did] not doubt." No quiet title action was filed. Instead, on March 4, 2019, Byrd and Mullins filed a third encroachment permit application with the Department identical to the second: to add two boat lifts to their existing dock as well as replace two mooring buoys. Adjacent neighbors Larson and Coffey again filed their objections with the Department, asserting that Byrd and Mullins were not littoral owners on Priest Lake.

Of note, in their objections, Larson and Coffey never asserted that Coffey owned the strip of shore between Larson's iron pins and the water's edge—they argued solely that the Byrd and Mullins properties are not lakefront parcels. Back in 1967, Larson (whose deed contains the same waterward description that is at issue here) constructed a dock into Priest Lake from the shore area off his property. The Taylors, the neighboring owners at the time, never objected to the dock's creation or existence from 1967 onward, nor did they object to the Larson's confirmation of their encroachment in 1975 following Idaho's adoption of the Lake Protection Act. Indeed, since 1967, Larson has made several encroachment applications to alter or add to his dock, with no objections from Coffey, Coffey's predecessors, or other littoral neighbors.

With an encroachment-application dispute in hand, the Department ordered a hearing and appointed Mick Thomas, Administrator of the Department's Oil and Gas Division, as the hearing officer. One piece of evidence presented at the hearing was from the Department's Lands Resource Specialist who submitted a hearing statement on behalf of Byrd and Mullins. It stated: "The description of these properties goes to the 'shore of Priest Lake,' which can be reasonably interpreted to be the [ordinary high water mark] of Priest Lake. . . . As a result, Coffey cannot own anything west of these lots because the area to the west (below the [ordinary high water mark]) is state owned lakebed." This specialist—who personally visited the Byrd and Mullins properties to

4

assist with establishing the littoral right lines between Byrd and Coffey's properties—opined that the meander lines on Coffey's surveys "incorrectly show" a sliver of property belonging to Coffey between the parcels and Priest Lake because the parcels abutted the ordinary high water mark.

Following the hearing on May 24, 2019, the hearing officer issued a preliminary order, denying the encroachment permit application and stating in part:

> The Applicants may own the property that abuts Priest Lake. However, it is their burden to show that they are littoral owners. The record lacks sufficient evidence to show, by a preponderance of the evidence, that such is the case. Accordingly, they have not sufficiently shown they are littoral owners or subsequently, that they have littoral rights. Without littoral rights, they cannot build encroachments in or on Priest Lake. Based on the evidence in the record, their Application must be denied in its entirety.

This decision rested primarily on the deed and survey for Byrd's property, which described the property line as extending to iron pins along the shoreline. The hearing officer further found that the iron pins did not extend to the high water mark of Priest Lake, which left a strip of land between the pins along the shoreline and the original high water mark. Therefore, the hearing officer denied the encroachment application. The preliminary order became final by operation of law on July 8, 2019. Byrd and Mullins thereafter filed a petition for judicial review with the district court pursuant to both the Idaho Administrative Procedure Act and the Lake Protection Act.

The district court affirmed the final order denying the encroachment permit application. Recognizing Byrd and Mullins' "frustrations with the seemingly inconsistent outcomes of their 2016 encroachment application and the 2019 application at issue here," the district court determined that the Department's findings were not clearly erroneous. The district court's decision rested on two key determinations. First, the court concluded that issue preclusion did not apply because the initial 2016 dock permit had been granted without a dispute, meaning that the Department never had to determine the littoral rights of adjoining riparian landowners. Second, there was insufficient evidence presented by Byrd and Mullins to establish littoral rights, particularly where the deeds lacked express language either conveying those rights or taking the property boundary to the original high watermark. The district court concluded that the existence of conflicting evidence was not sufficient to overturn the Department's decision.

Byrd and Mullins timely appealed the district court's decision to this Court.

## II. STANDARD OF REVIEW

This appeal involves a navigational encroachment decision by the Idaho Department of Lands, acting on behalf of the State Board of Land Commissioners (hereinafter the "Board"),

5

making this a government agency action. The Board is authorized to regulate, control, and permit encroachments in Idaho's navigable lakes and exercises that authority through the instrumentality of the Department. I.C. §§ 58-101, 58-104(9), 58-1303. Under Idaho's Administrative Procedure Act ("APA"),

> the court shall affirm the agency action unless the court finds that the agency's findings, inferences, conclusions, or decisions are: (a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) not supported by substantial evidence on the record as a whole; or (e) arbitrary, capricious, or an abuse of discretion.

I.C. § 67-5279(3). *See also Dupont v. Idaho State Bd. of Land Comm'rs*, 134 Idaho 618, 621, 7 P.3d 1095, 1098 (2000). Where a district court acts in an appellate capacity under the APA, this Court reviews an agency's decision independent of the district court's determination. *Dupont*, 134 Idaho at 621, 7 P.3d at 1098; *Erickson v. Idaho Bd. of Licensure of Pro. Engineers & Pro. Land Surveyors*, 165 Idaho 644, 647, 450 P.3d 292, 295 (2019). While the Court freely reviews questions of law, it cannot reweigh evidence on questions of fact. *Vickers v. Lowe*, 150 Idaho 439, 442, 247 P.3d 666, 669 (2011). "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." I.C. § 67-5279(1). "If the agency action is not affirmed, it shall be set aside, in whole or in part, and remanded for further proceedings as necessary." I.C. § 67-5279(2).

### III. ANALYSIS

This case concerns an appeal of a denied encroachment permit application, but its true focus is over a question of ownership: whether the narrow strip of land between the iron pins along Priest Lake's shore and its high water mark belong to Byrd and Mullins or to Coffey. This ownership determination ultimately controls the littoral rights of the Appellants, including whether they can enlarge their encroachment with the boat lifts and replace the navigational aids of the buoys. Byrd and Mullins argue that their existing permit for the two-family dock is a final determination, in law and fact, that they own littoral properties with corresponding littoral rights for an encroachment on Priest Lake. They frame this case in the light of collateral estoppel, with additional arguments concerning the lack of substantial and competent evidence supporting the Department's decision. However, we must first address an issue of statutory authority—namely, whether Byrd and Mullins are seeking declaratory relief within the confines of administrative proceedings.

6

Before addressing the merits of the legal arguments at issue here, some legal background on the laws governing navigable lakes is warranted. Pursuant to the public trust doctrine, the State of Idaho owns in trust the beds and banks of navigable waters for the use and benefit of the public, including the uses of navigation, commerce, and fisheries. *Newton v. MJK/BJK, LLC*, 167 Idaho 236, 242, 469 P.3d 23, 29 (2020). The State's ownership of the lakebed extends up to the high water mark, while a littoral (lakeside) owner on a navigable lake takes title down to the high water mark as it existed in 1890 when Idaho was admitted to the Union. *Lake CDA Invs., LLC v. Idaho Dep't of Lands*, 149 Idaho 274, 278, 233 P.3d 721, 725 (2010); *Erickson v. State*, 132 Idaho 208, 210, 970 P.2d 1, 3 (1998). Thus, like a riparian owner on a navigable river or stream, a littoral owner's rights to access and use the waters of the lake depend on his adjacency to that navigable lake. *Newton*, 167 Idaho at 243, 469 P.3d at 30; *Lovitt v. Robideaux*, 139 Idaho 322, 326, 78 P.3d 389, 393 (2003) ("Littoral rights, for purposes of issuing dock permits, refer to the right of owners of land next to the navigable waters of a lake to maintain their adjacency to the lake and make use of their right by building or using navigational encroachments."). *See also* I.C. § 58-1302(f).

The "natural or ordinary high water mark" is statutorily defined as "the high water elevation in a lake over a period of years, uninfluenced by man-made dams or works, at which elevation the water impresses a line on the soil by covering it for sufficient periods to deprive the soil of its vegetation and destroy its value for agricultural purposes." I.C. § 58-1302(c). *See also* I.C. § 58-104(9). "Since the [ordinary high water mark] is created by the water covering the soil for a period of time, and since water seeks its level, the [ordinary high water mark] will be the same at all places around the lake." *In re Sanders Beach*, 143 Idaho 443, 447, 147 P.3d 75, 79 (2006). This line is separate from the artificial high water mark, which is "the high water elevation above the natural or ordinary high water mark resulting from construction of man-made dams or control works and impressing a new and higher vegetation line." I.C. § 58-1302(d).

Since Idaho's statehood in 1890, Priest Lake has been a navigable lake. *State v. Hudson*, 162 Idaho 888, 889, 407 P.3d 202, 203 (2017). The construction of a dam in 1950 stabilized Priest Lake's elevation at approximately 2,437.64 feet from the summer months of July to September since 1951. *Id.* Nevertheless, the actual location of Priest Lake's high water mark has not been adjudicated. *See id.* at 892–93, 407 P.3d at 206–07.

Enacted in 1975, the Lake Protection Act gives the State authority "to regulate encroachments and activities that occur in, on, or above navigable lakes in the State of Idaho." *Id.*

7

The State has authority to regulate encroachments below either the ordinary or artificial high water marks. *Id.* at 892, 407 P.3d at 206. This authority is primarily vested in the State of Idaho Board of Land Commissioners, which holds authorization to regulate, control, and permit encroachments in Idaho's navigable lakes. I.C. §§ 58-101, 58-104(9), 58-1303. Littoral owners wanting to build or enlarge their navigational encroachments must apply for a permit pursuant to the Lake Protection Act:

> Applications for construction or enlargement of navigational encroachments not extending beyond the line of navigability nor intended primarily for commercial or community use shall be processed by the board with a minimum of procedural requirements and shall not be denied nor appearance required except in the most unusual of circumstances or if the proposed encroachment infringes upon or it appears it may infringe upon the riparian or littoral rights of an adjacent property owner.

I.C. § 58-1305(a). "Generally, the [B]oard should approve a permit application unless the proposed encroachment infringes, or may infringe, upon the littoral rights of an adjacent property owner." *Lovitt*, 139 Idaho at 326, 78 P.3d at 393 (citing I.C. § 58–1305(a)).

### A. Byrd and Mullins cannot seek declaratory relief concerning their ownership rights through administrative proceedings.

"Under the [APA], parties seeking to challenge agency action, such as the decision to issue a permit, must do so by filing a petition for judicial review." *Newton*, 167 Idaho at 241, 469 P.3d at 28 (citing I.C. § 67-5270 and I.R.C.P. 84(a)(1)). The Department and the Board do not have the authority to determine property ownership; rather, the extent of the agency's powers lies in verifying littoral rights before issuing an encroachment permit. *See* I.C. § 58-1303 (granting powers to the Board to "regulate," "control," and "permit" navigational encroachments); *Lovitt*, 139 Idaho at 326–27, 78 P.3d at 393–94 ("The Department, based on its experience and expertise, is in the best position to determine the proper placement of docks based on the requirements of the [Lake Protection Act] and the parties' respective littoral rights. Under the Act, the Department may determine whether a proposed dock infringes upon a neighbor's littoral right."). This limitation was recognized by the hearing officer at the beginning of proceedings when he reminded the parties: "The [Department] does not determine ownership. We make decisions on ownership that are confirmed."

This Court has cautioned against the "increasing tendency, particularly in land use cases, for counsel to combine civil damage claims with their administrative appeal." *Euclid Ave. Tr. v.*

8

*City of Boise*, 146 Idaho 306, 308, 193 P.3d 853, 855 (2008). This is a policy concern, for civil actions and administrative appeals are administered differently by the courts, and their conglomeration can result in confusion as well as lack of both process and proper review. *Id.* at 309, 193 P.3d at 856. For instance, applications for the construction or enlargement of navigational encroachments, such as a dock, are processed by the Board "with a minimum of procedural requirements." I.C. § 58-1305(a). Civil actions, on the other hand, can involve discovery, motion practice, and a trial. Thus, the Court has held "that actions seeking civil damages or declaratory relief may not be combined with petitions for judicial review under [Idaho's APA]." *Euclid Ave. Tr.*, 146 Idaho at 309, 193 P.3d at 856.

While the parties have not filed a complaint praying for a declaratory judgment, they are ultimately seeking an adjudication of their littoral rights, which is an issue inherently tied to ownership of the land. Byrd and Mullins are relying on the administrative proceedings to clean up their property dispute and deeds when their issues should be brought in a quiet title action at the district court. A district court is a court of general jurisdiction with the power to address the interpretation of the deeds and award declaratory relief to the rightful party. IDAHO CONST. art. V, § 20; *Ollis v. Orr*, 6 Idaho 474, 56 P. 162, 163 (1899). *See also* I.C. § 10-1201. There, the case could undergo discovery, a trial, and the process of appellate review to fully determine a declaration of their property rights. Such a case would receive the full process of a civil action rather than the "minimum of procedural requirements" provided under the Lake Protection Act. I.C. § 58-1305(a).

However, trapped here in the context of the Department's administrative hearings, the agency's hands were tied. The Department lacked the authority to declare Byrd and Mullins littoral owners in this case without also declaring them the owners of the shoreline Coffey claims. Similarly, the Department could not claim Byrd and Mullins were *not* littoral owners without validating Coffey's claim of ownership. Nor could the Department reopen the prior permit's validity without making an ownership determination. Denying the application was the only course open to the Department without exceeding its statutory authority.

Accordingly, since the Department lacks authority to determine ownership for littoral rights, it was right to deny the encroachment application due to insufficient evidence of ownership. As emphasized by the district court: "It is important to note that the Hearing Officer did not find that the Petitioners' properties are not littoral in nature, but instead found that while '[t]he

Applicants may own the property that abuts Priest Lake . . . [t]he record lacks sufficient evidence to show, by a preponderance of the evidence, that such is the case.' " We agree that a declaration of littoral rights would have been improper in this context. Therefore, we affirm the Department's denial of Byrd and Mullins's encroachment application on the basis their petition exceeded the statutory authority of the agency and failed to prove by a preponderance of the evidence that they were littoral owners on Priest Lake. The district court, not the Department, is the proper forum for resolving upland ownership disputes.

To this argument, the parties also dispute whether the Department's denial of the encroachment application was supported by substantial and competent evidence, as required by the APA in Idaho Code section 67-5279(3). "Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion." *State ex rel Indus. Comm'n v. Sky Down Skydiving*, *LLC*, 166 Idaho 564, 570, 462 P.3d 92, 98 (2020) (citation and internal quotation marks omitted). We, however, conclude that the Department's lack of authority is equally determinative on this issue.

After examining the record and conducting a hearing, the Department's determination rested primarily on the fact there was land between the "iron pins" specified in the deed and the ordinary high water mark in August 2018. Thus, the Department concluded, "there [was] insufficient evidence that Applicants' property extends to the high water mark." In making this determination, the Department examined the various property deeds, their boundary descriptions, and the survey maps provided by the parties. Many other pieces of evidence in the record from Byrd and Mullins also presented conflicting evidence that the Taylors meant to convey littoral ownership rights to the three parcels created in 1967, even if the deed language differed slightly from later conveyances.

Examining the evidence altogether shows the Department placed great weight on the deed's language while disregarding much of the conflicting evidence meant to show the original grantors' intent to convey littoral ownership. Yet as we have concluded, the Department's decision also rested on its limited authority to grant or deny permits. The Department could not determine that Byrd and Mullins are littoral owners without also adjudicating Coffey's claim to own land between Appellants' properties and Priest Lake. To deny the permit gives the parties an opportunity to clean up title in the courts; to approve the application adjudicates a land dispute and takes the Department outside of its statutory authority. As such, it was appropriate—and within its

10

lawful procedures—to deny the encroachment application for lack of evidence. Undoubtedly, there is still conflicting evidence to be weighed; but this dispute presents questions of law and fact best left for a quiet title action, should the parties choose to pursue that course.

## B. Collateral estoppel does not apply in the case at hand.

Byrd and Mullins contend that they demonstrated littoral ownership in acquiring their original dock permit, which "couldn't have been issued absent a determination that the Byrd and Mullins properties had littoral rights." Issue preclusion, they argue, collaterally estopped Larson and Coffey from challenging the littoral character of their properties. Respondents argue that collateral estoppel cannot apply here because there was no prior litigation of the issue. We agree that there is no collateral estoppel effect from the issuance of the first encroachment permit.

Res judicata comprises two legal concepts: issue preclusion, also known as collateral estoppel, and claim preclusion. *Berkshire Invs., LLC v. Taylor*, 153 Idaho 73, 81, 278 P.3d 943, 951 (2012). Collateral estoppel bars relitigation of a previously determined issue where:

> (1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation.

*Id.* This doctrine exists to prevent the resurrection of a lawsuit already laid to rest. *Id.* Importantly, "[t]he doctrine of res judicata applies to administrative proceedings." *Sagewillow, Inc. v. Idaho Dep't of Water Res.*, 138 Idaho 831, 844, 70 P.3d 669, 682 (2003).

In each prong of the collateral estoppel analysis, "prior litigation" is required. The administrative proceedings regarding encroachment permits are conducted with a "minimum" of procedures and the general assumption is that a permit will issue. I.C. § 58-1305(a). Here, Byrd and Mullins acquired a dock permit without a hearing. Whether Coffey and Larson objected to this initial encroachment application remains somewhat disputed, but it is reasonable to infer that the lack of a hearing suggests the neighbors failed to file a formal objection even if they raised concerns through an exchange of letters with a Department employee. Likewise, there is evidence indicating all parties were aware of a potential ownership dispute despite ongoing, unchallenged littoral use of the Byrd and Mullins properties. Still, no formal hearing or objections occurred. With only minimal procedures followed (i.e. the simple submission of an encroachment

11

application) and no hearing conducted, there is no record demonstrating any litigation of the parties' littoral rights, much less ownership of the shoreline beyond the iron pins.

Byrd and Larson contend that *Lovitt v. Robideaux,* 139 Idaho 322, 78 P.3d 389 (2003), demonstrates that their permit is a final determination of littoral rights. We disagree. In *Lovitt*, the district court considered the littoral rights of adjacent landowners on Hayden Lake in northern Idaho, and whether their littoral right lines and encroachments infringed on their neighbor's rights. 139 Idaho at 323–25, 78 P.3d at 390–92. In reviewing the Lake Protection Act, this Court stated:

> . . . issuance of a dock permit under the [Lake Protection Act] necessarily contemplates determination of littoral rights as defined by the Act. A permit and littoral rights are not necessarily separate and distinct. A holder of a valid permit cannot locate a dock in a manner that infringes upon an adjacent landowner's littoral right.

*Id*. at 326–27, 78 P.3d at 393–94. This is the language Byrd and Mullins rely on. The case of *Brett v. 11th Street Dock Owners' Ass'n., Inc.* expounded on this holding to add: "Thus, [the Department] must determine the littoral rights of adjoining riparian landowners when there is a dispute regarding placement of an encroachment pursuant to a permit and possible infringement of those rights." 141 Idaho 517, 521, 112 P.3d 805, 809 (2005). Clearly, issuance of a valid permit contemplates a determination of littoral rights. *Id.* However, the key difference between *Lovitt*, *Brett*, and the case at hand, is that those cases held there was no dispute over whether a party was a littoral owner. All parties involved already had valid, unclouded permits and littoral rights. The question for them turned on whether their docks unlawfully infringed on their neighbor's littoral rights. Neither *Lovitt* nor *Brett* contemplated whether the permits were final adjudications or determinations of littoral ownership. In contrast, the dispute here focuses on whether Byrd and Mullins even have littoral rights and property, and, thus, whether they can obtain a valid encroachment permit.

Altogether, collateral estoppel does not bar the challenge to Mullins and Byrd's littoral rights. Their initial permit issued without a hearing and with only minimal procedures was not a final adjudication of their littoral rights and ownership. As such, the Department was correct to permit Coffey's objection and conduct a hearing on the dispute.

## C. The hearing officer did not equate a meander line to a boundary line as Appellants contend.

The Appellants' final contention on appeal is that the hearing officer erroneously adopted Coffey's reasoning equating a meander line with a boundary line. The briefing on appeal is clear

12

that all parties agree with the established law that meander lines are not boundary lines. While Appellants are correct that Coffey made misstatements on this law throughout the administrative process, there is no evidence to suggest the hearing officer adopted this reasoning.

Typically, meander lines are established by government surveys "for the purposes of defining the sinuosities of the banks of the [navigable waters], and as the means of ascertaining the price to be paid by the purchaser to the government for meandered fractional lots." *Heckman Ranches, Inc. v. State, By & Through Dep't of Pub. Lands*, 99 Idaho 793, 796, 589 P.2d 540, 543 (1979). It is well established in Idaho law "that 'meander lines . . . are not boundary lines, rather the river or stream forms the boundary line.' Therefore, the meander lines cannot be used to establish the [ordinary high water mark]." *Erickson v. State*, 132 Idaho 208, 212, 970 P.2d 1, 5 (1998). "To this general rule is added an exception for special circumstances that show an intent to limit the grant of a land patent to the meander line only." *Heckman Ranches, Inc.*, 99 Idaho at 796, 589 P.2d at 543.

The hearing officer did not use meander lines to determine the location of the ordinary high water mark. He did not determine the location of the ordinary high water mark. He did not mention meander lines. He did not even determine any property boundaries. The hearing officer recognized that the Department could not make such determinations. Instead, the Department's order denying the encroachment application concluded that Byrd and Mullins failed to prove, by a preponderance of the evidence, that their property extended to the high water mark. There is no indication that the hearing officer relied on Coffey's misstatements concerning meander lines. Accordingly, the hearing officer's findings are not erroneous.

**D. Attorney fees shall not be awarded.**

Attorney fees may be awarded to a prevailing party pursuant to applicable statutory laws. While the Department requests attorney fees and costs on appeal under Idaho Code section 12-117, Larson and Coffey request attorney fees under both Idaho Code section 12-117 and Idaho Code section 12-121.

Idaho Code section 12-117(1) mandates an award of reasonable attorney fees to the prevailing party "in any proceeding involving as adverse parties a state agency or a political subdivision and a person." Thus, section 12-117(1) directs a court to award attorney fees in an appeal from an administrative decision where "it finds that the nonprevailing party acted without a reasonable basis in fact or law." I.C. § 12-117(1). *See also Rouwenhorst v. Gem Cnty.*, 168 Idaho

13

657, ___, 485 P.3d 153, 163 (2021). While we have critiqued the course Byrd and Mullins took through the administrative process to clear up the cloud on their title, we do not agree that they acted without any reasonable basis in fact or law in appealing their denied application. Byrd and Mullins purchased "waterfront" property. They acquired a dock through an approved encroachment permit from the Department, and they exercised littoral uses for years without issue. In appealing their denied permit, Byrd and Mullins presented some legitimate issues in an effort to protect their interests.

Section 12-121, however, requires a "civil action" for an award of attorney fees: "In *any civil action*, the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121(emphasis added). Appeals arising from a petition for judicial review from an administrative decision are not "civil actions." *In re Idaho Workers Comp. Bd.*, 167 Idaho 13, 24, 467 P.3d 377, 388 (2020), *reh'g denied* (Aug. 4, 2020) ("Attorney's fees are not available under Idaho Code section 12-121 on petitions for judicial review because they are not commenced by the filing of a complaint."); *Krempasky v. Nez Perce Cnty. Plan. & Zoning*, 150 Idaho 231, 239, 245 P.3d 983, 991 (2010).

Therefore, no attorney fees will be awarded under either statute. Only costs will be awarded as a matter of right to the prevailing party here, pursuant to Rule 40(a) of the Idaho Rules of Appellate Procedure.

## IV. CONCLUSION

For the foregoing reasons we affirm the district court's decision affirming the Department's denial of Appellants' encroachment permit application. Costs are awarded to Respondents as the prevailing parties on appeal.

Chief Justice BEVAN, and Justices MOELLER and ZAHN CONCUR.


STEGNER, J., dissenting.

I respectfully dissent from the majority's opinion. Our case law makes clear that "[t]he doctrine of *res judicata* applies to administrative proceedings." *Sagewillow, Inc. v. Idaho Dept. of Water Resources*, 138 Idaho 831, 844, 70 P.3d 669, 682 (2003). The majority's decision however—incorrectly, in my view—effectively allows our jurisprudence to be repealed without

14

even bothering to say as much. This case presents precisely what the doctrine of *res judicata* seeks to prevent. *Res judicata* means "a thing adjudged" or, more simply, "a thing decided." *See Res judicata*, BLACK'S LAW DICTIONARY (7th ed. 1999). The majority's decision represents just the opposite in that it disregards an earlier decision of the Idaho Department of Lands (the Department). I would conclude that the district court erred in upholding the most recent order from the Department.

> *Res judicata* serves three fundamental purposes: (1) it preserves the acceptability of judicial dispute resolution against the corrosive disrespect that would follow if the same matter were twice litigated to inconsistent results; (2) it serves the public interest in protecting the courts against the burdens of repetitious litigation; and (3) it advances the private interest in repose from the harassment of repetitive claims.

*Ticor Title Co. v. Stanion*, 144 Idaho 119, 123, 157 P.3d 613, 617 (2007). "The doctrine of *res judicata* covers both claim preclusion (true *res judicata*) and issue preclusion (collateral estoppel)." *Id.* Collateral estoppel "protects litigants from having to relitigate an identical issue in a subsequent action." *Id.* at 124, 157 P.3d at 618.

There are five elements required for collateral estoppel "to bar the relitigation of an issue determined in a prior proceeding[.]" *Id.* In my view, all five elements have been met here. They are:

> (1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation.

*Id.*

First, it is clear to me that the Department had a full and fair opportunity to litigate the issue of whether Byrd and Mullins had littoral rights when it concluded that Byrd and Mullins could install a boat dock in the waters of Priest Lake to better access the lake. The Department was the entity that originally issued the encroachment permit to Byrd and Mullins in 2016 so they could build their dock. A prerequisite to the Department issuing that permit was a determination that Byrd and Mullins had littoral rights to the lake. *See Lovitt v. Robideaux*, 139 Idaho 322, 326, 78 P.3d 389, 393 (2003) ("Littoral rights, for purposes of issuing dock permits, refer to the right of owners of land next to the navigable waters of a lake to maintain their adjacency to the lake and

15

make use of their right by building or using navigational encroachments."). The Department not only had a full and fair *opportunity* to litigate whether Byrd and Mullins had littoral rights, it was the entity that *decided* they did have those rights. Likewise, both Coffey and Larson had the opportunity to litigate the Department's initial decision. They could have filed objections with the Department in 2016 or they could have sought review of the Department's decision in district court. That they did not to do so does not negate their opportunity to litigate the issue.

Second, the issue decided when Byrd and Mullins applied for the dock permit is identical to the issue presented in this case: whether Byrd and Mullins had littoral rights to the lake. In order to issue the dock permit in 2016, the Department had to find it more probable than not that Byrd and Mullins had littoral rights. It is undisputed that the Department issued a dock permit to Byrd and Mullins and that they built a dock in reliance on that permit. The status of that decision is not at issue.

Third, whether Byrd and Mullins had littoral rights was decided in 2016 when the dock permit was issued. The majority concludes that "[o]wnership in this case has never been decided" because "[t]he Department only verifies littoral rights through an informal process." In my view, this conclusion is inaccurate for multiple reasons. I begin by noting this was not an "informal process." The Department's decision had important legal ramifications. The Department has a statutory obligation to ensure parties who request dock permits own littoral rights. I.C. § 58-1305. That Byrd's and Mullins' littoral rights were not "disputed" in 2016 did not absolve the Department of its legal duty to determine that Byrd and Mullins had those rights. The "issuance of a dock permit under the [Lake Protection] Act necessarily contemplates determination of littoral rights as defined by the Act." *Lovitt*, 139 Idaho at 326, 78 P.3d at 393. In addition, while I agree that the Department's determination does not resolve the "ownership" of Byrd and Mullins to the lake front in the way that a quiet title action would, that is not the question we are being asked to answer in this case. The simple question we are faced with is whether the Department may at this late date deny boat lifts for a dock that it has already permitted and which has actually been constructed. I would hold that collateral estoppel precludes the Department from doing so now. As this Court has previously explained:

> Generally, the board should approve a [dock] permit application unless the proposed encroachment infringes, or may infringe, upon the littoral rights of an adjacent property owner. I.C. § 58–1305(a). The initial determination of possible infringement is made based on the plans the applicant provides. I.C. § 58–1305(b).

16

*Id.* Thus, prior to issuing a dock permit, the Department must determine whether the dock would "infringe[], or may infringe, upon the littoral rights of an adjacent property owner." *Id.* This determination must occur irrespective of whether the littoral rights are "disputed" by adjoining landowners.

Fourth, the 2016 dock permit was a final judgment for purposes of collateral estoppel. "[F]or purposes of issue preclusion, a final judgment includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *Rodriguez v. IDOC*, 136 Idaho 90, 94, 29 P.3d 401, 405 (2001) (internal quotations omitted). The dock permit, necessarily issued upon a determination that Byrd and Mullins had littoral rights, is sufficiently firm to be accorded conclusive effect. Furthermore, as noted above, Larson and Coffey could have sought review of the dock permit in district court. They simply did not do so.

Fifth and finally, the Department here is both a party and an adjudicator and, as noted above, had the legal obligation to ensure Byrd and Mullins had littoral rights prior to issuing the dock permit. Additionally, Larson and Coffey, while not parties to the 2016 action, were in privity with the Department when it comes to the determination of littoral rights. As discussed above, the Department was required to determine whether issuing a dock permit to Byrd and Mullins would "infringe . . . upon the littoral rights of an adjacent property owner." *Lovitt*, 139 Idaho at 326, 78 P.3d at 393. As the adjacent property owners, Larson and Coffey therefore "derived a direct interest in the outcome of the former litigation from the" Department. *See Lohman v. Flynn*, 139 Idaho 312, 320, 78 P.3d 379, 387 (2003). Because all five elements of collateral estoppel are satisfied here, I would reverse the district court's decision rejecting its application.

Though the district court "recognize[ed] Byrd['s] and Mullins' 'frustrations with the seemingly inconsistent outcomes of their 2016 encroachment application and the 2019 application at issue here,'" it nonetheless failed to apply collateral estoppel. I would hold the district court erred in doing so. This is more than "seemingly inconsistent;" it is unquestionably contradictory. It is precisely why *res judicata* exists: to prevent "against the corrosive disrespect that would follow if the same matter were twice litigated to inconsistent results[.]" *Ticor Title Co.*, 144 Idaho at 123, 157 P.3d at 617. How can Byrd and Mullins have littoral rights to build a dock, yet not have littoral rights to install boat lifts on the very same dock? The majority's decision to affirm the district court's failure to apply collateral estoppel in what is a clear-cut case, effectively overrules our precedent that collateral estoppel applies to administrative proceedings. Under the

17

majority's decision today, this well-established rule of law has effectively been nullified without us explicitly saying so. I predict this will result in significant confusion, uncertainty, and litigation for both the bench and bar going forward. Accordingly, I respectfully dissent.